The Court,

objected that here appeared to be no proper parties,
and said that notice ought to have been given to the county of Worcester, if they were interested, and another to the town. The present defendant, having no connection with the record, except as one of the committee of the Sessions appointed to lay out the way, has no interest in the cause.
Bigelow observed that the practice had heretofore been very loose, and added, that, as the record was now before the Court, although perhaps improperly brought before them, if, upon inspection, gross errors were apparent upon the face of it, the Court would not hesitate to quash it.
As to the first error, besides that the statute in this case requires an application or petition, to give jurisdiction to the Sessions, it is a standing rule of that Court that the petitioners stipulate for the payment of all costs of the application, if it meet an unsuccessful issue. The applicants ought also to appear upon the record, that it may be known to whom the scire facias is to be directed.
As to the second error, it was said, that as the town were held to pay all damages and costs, they ought to be heard on the question of the convenience or necessity of the alteration prayed for, before a judgment passed on that question. This was a matter of common right, and if courts had heretofore lost sight of sound principles, it vas time to recall their attention to them.
For the respondent, it was said that the application in the statute was not necessarily to be in writing. It might [ * 230 ] be by * motion in Court by counsel, or by one of the members, and in such case it was not to be expected to be of record.
Neither does the statute expressly direct notice to parties interested previous to the determination of the Sessions, that the way is ot common convenience and necessity. But it is said, this is a principle of common right. If the legislature had so contemplated it. they would have prescribed some form of notice, as by proclamation, by posting notifications in the several towns, by advertisement in the public papers, or in some other sufficient manner.
But if such notice is held necessary, it appears here that the com *199 mittee, who, in this case, are the representatives and organ of the Sessions, did notify all concerned. It is perhaps no strained construction, to intend here that the committee notified all concerned to appear before the Court to be heard upon the question of convenience and necessity. In support of a record, the Court will presume every thing.
The cause was continued nisi, and at this term the Court were decidedly of opinion that an application to the Sessions was necessary to authorize them to act upon the subject; and that of common right the town was to be notified before an adjudication was made of the common convenience or necessity of the way, or the altera tian proposed (1).

Proceedings quashed.

See Commonwealth vs. Coombs, ante, vol. 2, p. 489.

 [If the matter were res integra, it might well be doubted whether any highway can legally be made through the lands of any individual without the express authority of the legislature having been previously given for that particular purpose. In tht, tenth section of the declaration of rights, it is declared that no part of the property of any individual can with justice be taken from him, or applied to public uses without his own consent, or that of the representative body of the people. And whenever the public exigency requires that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor. The legislature are solely and specially intrusted with the discretionary power of declaring whether, in their judgment, the public exigency requires, in any and each particular case which may arise, that the property of any individual should be taken for the public use; and this is a power which they cannot delegate. The rule, delegatus non potest delegare, is as applicable to a public body as to an individual. Such a construction of the constitution would cause the course of proceeding in laying out and making every new highway or turnpike substantially to conform to the proceedings in England, in like cases. There, applications are made in every case to parliament; and certain standing rules are adopted, which are to be complied with before any bill, for any such purpose, can pass into a law.—1 Dwarris, 331, 340.—Ellis, 117, 125.— Previous to the application, a survey must be made ; plans of the whole road must be prepared upon a scale of not more than five nor less than three inches to a mile ; an estimate of the expense must be made and signed by the surveyor; notice descriptive of the line of the road must be given in the newspapers, and otherwise; plans must be deposited with the clerk of every county, riding, and division through which the road is to run; application must be made to every person whose land is to be taken for his assent or dissent, and his answer must be given; and separate lists must be made of those who assent, dissent, or are neuter. The petition must state, among other things, that it would be as well for the benefit of the public at large, as of the particular inhabitants specified, and the allegations of the petition must be proved. The bill contains a preamble, which, among other things, states that the road will be of great benefit and advantage, not only to particular inhabitants, but to the public at large; and this preamble must be proved, and evidence is received for and against it. If it be not proved, the bill fails of course. And by standing orders, the bill must in all cases contain various particular clauses calculated to protect the interests of individuals as well as of the public at large. Nearly similar rules are observed in regard to canals, railways, &c. But in this commonwealth, the practice has been quite otherwise, and the legislature has been so long in the habit of delegating their authority in these cases, that it is perhaps now quite too late to discuss the subject.
The spirit, if not the letter of the constitution, seems to have been violated in practice in another particular, in making highways, and other public works. The practice has been to award to persons whose property has been taken, the value thereof, after deducting the estimated amount of all the benefit which such person
*200 may receive from the public work. He does not thereby obtain, what the constitution says he shall have, a compensation; that is to say, an equivalent for the property taken from him; for he cannot be said to have a compensation or equivalent when any deduction is made. He, at the same time, is required to contribute to the expense of the public work, by paying taxes which are assessed upon him in proportion to the increased value of his remaining property. This rule of estimating the compensation or “ damage,” as it is improperly called, was first laid down by the late Chief Justice Parsons, in the case above referred to of the Commonwealth vs. Coombs. The question, however, did not arise in that case, and was not argued before the Court. All which was said was gratis dictum. The same remarks are applicable to the case of The Commonwealth vs. The Sessions of Norfolk (5 Mass. 435), when the same learned judge took occasion again unnecessarily to express a like opinion. In The Commonwealth vs. The Sessions of Midddlesex (9 Mass. 370), the question seems to have been necessary for the decision of the case in the way it was decided; but it is quite clear that it was not discussed by the counsel, the rule before mentioned being taken as indisputably correct; and the decision in another point of view was unquestionably wrong. (See note to the case.) The question has, therefore, as far as appears from the printed reports, never been argued before the Court, and perhaps has never been very fully or deliberately considered by them. The practice is as inequitable as it is repugnant to the spirit of the constitution. To deduct from the value of the property taken any thing for a supposed benefit derived from the public work for which it was taken, is-taking from him that amount in money, and in effect taxing him to that amount over and above the rest of the community, for the public work of improvement, the benefits whereof, in contemplation of law, all enjoy equally with him self, and from which, in point of fact, many may derive greater advantage than himself, without paying any thing more than the ordinary taxes, a proportion whereof, without regard to this extraordinary exaction, he also has to pay. In the case of lands taken for a new public street in a city or large and populous town, many, whose land is not touched, may derive great benefit and advantage from the proximity of their land to the new street. Many others may derive great benefit from the convenience afforded by the street for travel, and for the transportation of merchandise. Many others may derive advantage from the direction which the new street gives to the travellers. These persons pay nothing beyond the ordinary tax. Many, whose land is taken, contribute unequally. One has a few feet of land taken, and this is all which he contributes to the improvement. Another has half his lot, perhaps fifty times, or a hundred times, as much as the other, taken, and is obliged to contribute the whole of it; when, at the same time, the former derives more real benefit and adx antage from the improvement than the latter. Among fifty or a hundred whose property may be taken, it can rarely happen that any two contribute equally in proportion to the benefit received. It depends not on the benefit received, but on the local situation of his property, whether any person is obliged to contribute more or less, or any thing at all. Such a rule of taxing for public works of improvement can never be just or politic. And it may be added that the benefit which any individual derives from any public work of improvement beyond that of the rest of the community, is often accidental and contingent, and at the same time very uncertain, or difficult to be ascertained. It is true, all taxes for public works of improvement, as well as for all other public expenses, must, from the nature of things, be unequal. The benefits and advantages derived from such expenses are as unequal, and, indeed, more unequal than the conditions in life of the various members of the society at whose instance they are incurred. There is no practicable way of measuring with any certainty, what benefit or advantage each member of the community does receive. The only method of levying direct taxes for public works of improvement, so as to approximate as near as practicable to equity and justice, is that which has been adopted of taxing each member of the community therefor in proportion to his property, without regard to any benefit or injury which he individually may receive therefrom.—Ed.]