GEORGE WHEATON DEANS, ADMINISTRATOR OF JACOB FORE-
MAN, APPELLANT, VS. JAMES WILCOXON ET ALS., APPEL-
LEES.

1. This court has jurisdiction upon appeal or writ of error to review
the proceedings of the Circuit Court upon a *certiorari* to the County
Court.

2. In this State, under the Constitution, a *certiorari* lies from the Cir-
cuit Court to the County Court at the suit of the heir to bring up
the proceedings of the County Court in the matter of an order of
sale of real estate for the payment of the debts of the intestate.
The heir, while not required to be made a party to the proceedings
for the sale, has such an interest as entitles him to this writ upon
proper case made in discretion of the Circuit Court.

3. "It is essential to the jurisdiction of the Circuit Court, in a pro-
ceeding by *certiorari*, that the writ issue and be returned with a
transcript sought to be quashed, unless the writ and return are
waived."

4. In a proceeding by an administrator to sell real estate to pay debts
it is not essential to the jurisdiction of the court that the adminis-
trator should, in his petition, allege in terms that it is an intestate
estate. The allegation that he is an administrator, the record of
the County Court in the matter of the administration, at the same
time showing his appointment, and that it was an intestate estate,
is sufficient as to this matter.

5. It is not necessary that the petition of the administrator should in
terms allege that an estate is solvent or insolvent, as the County
Court has jurisdiction to sell lands to pay debts of both solvent
and insolvent estates. In the case of a solvent estate the petition
alleges an exhaustion of personal assets ; and in case of insolvent
estates a suggestion of insolvency. In this case the petition al-
leges that there is no personal estate, and the court finds that the
personal property is exhausted. This is sufficient as to this mat-
ter.

6. An allegation "that the lawful debts and demands existing against
the estate amount to the sum of twenty-two thousand six hundred
and sixty-five dollars, as appears by the schedule hereto annexed
marked A. and *reference therein* made, which he prays *with the ref-
erence* may be taken as a part of this, his petition," is a sufficient
allegation of the existence of the debt when the reference in the

schedule consists of an account sworn to by the parties and admitted by a former administrator to be due.

7. That a debt thus proved and admitted was extinguished by *laches* or lapse of time is not a question which the Circuit Court can determine, sitting as a court of law, upon *certiorari*, at the suit of the alleged heir to the County Court, in the matter of a petition by the administrator to sell real estate to pay debts, the creditor being no party, and the fact that the petitioners are heirs not being admitted by the administrator.

Appeal from the Circuit Court for Duval county.

This was a proceeding in the Circuit Court alleged by the appellees, Jacob Mason Wilcoxon, Redessa Minerva, J. T. and Ella A. Wilcoxon, John W. and Emma E. Rusk, Samuel B. Simpson and Felix Albright, Lydia and John Steelsmith, to have been upon *certiorari*, the appellants denying that any *certiorari* had ever issued, and at every stage of the proceedings where the question could be raised protesting that no such writ had issued. For this and other reasons of similar character, which will apper in the treatment of the case, a statement of the pleadings more in detail than usual is deemed necessary.

On the 6th day of June, A. D. 1881, the appellees, by their attorneys, filed in the Circuit Court for the State of Florida for the Fourth Judicial Circuit, in Duval county, their petition, sworn to upon information and belief by one of the firm of attorneys representing them. Petitioners alleged that they were the heirs at law of Jacob Foreman, deceased, late of the county of Duval; that on the 18th day of January, 1881, George Wheaton Deans was appointed administrator of the estate of the said Foreman by the Probate Judge of said county; that on the 23d day of April, A. D. 1881, by petition in writing, he prayed said court to grant him an order for the sale of lot number eight, in block thirty-one, in the City of Jacksonville, in said county, upon the pretence that it was necessary to pay

debts of said deceased; that the said proceedings were wholly *ex-parte*, and the order granting said petition was made without notice to said petitioners; that there were, no valid debts against said estate, the debts for the payment, of which said order was granted were at the time the said. petition was filed either paid off and discharged or long since barred; that a copy of said proceedings are hereto appended as a part of this petition.

Petitioners prayed the court to grant a writ of *certiorari* issuing from this court, directed to the honorable, the Judge of the County Court, to return to the Circuit Court the. record of said matter, and that the said court inspecting the said proceedings may advise further to be done therein what of right and according to law should be done. The petition was signed by Cockrell & Walker, attorneys for petitioners, and sworn to according to best knowledge, information and belief by A. W. Cockrell.

Accompanying this petition and upon the same day a copy of the proceedings of the County Court was filed, consisting of a petition of Geo. Wheaton Deans, filed November 15th, 1880, in the County Court of Duval county, representing that letters of administration had before that time been granted on the estate of Jacob Foreman, deceased, from that court to Elizabeth Foreman, deceased, and that thereafter letters were granted to J. P. Sanderson, who was also dead; that there was property of the said estate not administered upon, and debts due upon claims proved and probated against said estate yet unpaid. He prayed his appointment as administrator d. b. n. upon filing bond, &c. After publication and on the 18th January, A. D. 1881, such an order was made.

On the 23d of April, A. D. 1881, Deans, the administrator d. b. n., filed his petition to sell certain real estate, alleging that he was administrator d. b. n. of Jacob Foreman,

deceased; that there was no personal property of said intestate not administered upon; that the lawful debts and demands existing against said estate amount to the sum of twenty-two thousand six hundred and sixty-five dollars, as appears by the schedule hereto annexed marked A. and reference therein made, which he prays with the reference may be taken as a part of this, his petition. He then prayed an order of sale, &c.

Schedule A., filed with the petition, embraces one debt, being, as therein stated, amount due Augustus E. Bass and Job Bass, sole heirs of Elizabeth Bass, deceased, as per probated account offered and filed in the probate records of the county of Duval, State of Florida, on June 16th, A. D. 1856, and to which reference is hereby made for date and evidence of said account and amount due.........$28,620
Less amount received by Augustus E. Bass and Job
    Bass from said estate........................ 6,555

    Balance due.................................$22,065
Estimated expense of sale, Probate fees and com-
    missions................................... 600

                                      $22.665

By reference to the records mentioned, which are attached to this record, we find an account in which Foreman is charged by the estate of Elizabeth Bass with 1,050 bales of cotton valued at........................ $42,000
Credited by expenses of plantation........$9,000
Credited by expenses of minors, J. and A.
  E. Bass............................... 1,200
Credited by commissions.................. 3,180—$13,380

    Balance due estate of Bass................. .........$28,620
- This account is sworn to by J. and A. E. Bass before a Commissioner of the State of Florida in Louisiana. In

this affidavit these parties alleged that they are the sole heirs and representatives of Elijah Bass, deceased, late of the Parish of Concordia, Louisiana; that during their minority Dr. Jacob Foreman, deceased, intermarried with their mother, Elizabeth Foreman, now a widow; that the said Foreman became by law their co-tutor, and as such took possession of the whole estate of their deceased father, which consisted of a cotton plantation and slaves in Louisiana, sold and received the crops therefrom during the years 1836, '37 and '38; that the said Jacob Foreman gave no bond for his faithful administration of said estate, and rendered to affiants no account thereof; that said Foreman suddenly and secretly left the State of Louisana in 1×38 and 1839 largely indebted to affiants, then minors, as the heirs of Elijah Bass, deceased; that the foregoing account against the estate of said Foreman is, to the best of their knowledge and belief, true and correct, and that the balance of $28,620, as therein shown, is amount due affiants on 20th December, A. D. 1838, as heirs of said Elijah Bass, deceased, as nearly as can now be ascertained. This affidavit is dated June 9th, A. D. 1856.

Following this affidavit is a statement of Elizabeth Foreman, the then administratrix of the estate of Jacob Foreman, dated June 10, 1858, stating that she had carefully examined the foregoing claim of the estate of Elijah Bass against the estate of Jacob Foreman, showing a balance of $28,620; that she had examined the evidences in support thereof and found said claim to be correct and a just claim in behalf of Job Bass and Augustus E. Bass (sole heirs of Elijah Bass, deceased,) and that no part of said claim has been paid to them. This statement closes by an approval of the claim and a statement that she has no objection to the payment thereof in due course of administration. Following this paper, but without date or file mark, is a pe-

tition for the sale of the real estate of the Foreman estate
signed by J. P. Sanderson as attorney in fact for Elizabeth
Foreman, administratrix. The sale is sought to pay debts
upon the ground of insufficiency of the personal property
to pay the debts. In the schedule of debts attached to this
petition is embraced this claim of $28,000, and from the
account of the administration it appears that on the 20th
of October, A. D. 1856, a payment of $3,000 was made
upon it.

It appears from other papers on file that after this time
J. P. Sanderson was appointed administrator, and the pres-
ent administrator d. b. n. alleges his death in his petition
for appointment.

Following this is a schedule of the land sought to be sold
by the present admistrator d. b. n., valued at $3,500.
Then we have the order of the Probate Court authorizing
the sale, dated May 6, A. D. 1881. This order recites,
." and it appearing by said petition " (meaning the petition
for authority to sell) " and the schedule annexed thereto
that there are debts against said estate and no means of
paying the same, or any part thereof, without recourse to
said real estate, the personal property of said estate having
been exhausted. It is, therefore," &c., continuing the order
for the sale.

Upon the 13th day of May, A. D. 1881, we have in the
record of the Probate Court an entry reciting that the ap-
pellees represent that they are the heirs at law of Jacob
Foreman, deceased, and as such pray an appeal to the Cir-
cuit Court from this decree authorizing the sale of the
land. The petition with the record stated were filed in
the Circuit Court on the 6th of June, A. D. 1881. Upon
the petition we find an order of the court directing a *certi-
orari* to issue as prayed for. Upon the same day, but
whether filed before or after this order we are unable to

say, the administrator and appellant here filed a petition and moved to quash the proceedings upon grounds as follows: That the parties named had neither signed it nor sworn to it; that they were not parties in the court below; that there are no sufficient grounds set up for a *certiorari,* and that the alleged parties, if they have rights, have remedies both at law and equity. Upon the same day the appellees here, filed an amended petition purporting to be signed by themselves, which petition was sworn to upon information by A. W. Cockrell, one of their attorneys, alleging that they were the heirs at law of Foreman, reciting the appointment of Deans as administrator, his filing a petition to sell the land mentioned ; that said proceedings were wholly *ex-parte;* that the order of sale was made without notice to them ; that the petition failed to set up the facts which authorize said sale ; that the order authorizing the sale fails to show that the facts upon which the court was authorized to grant an order for the sale of the said real estate were established to the satisfaction of said court as required by law ; that there were no valid debts against said estate, and that the debts referred to in said petition of the administrator for the satisfaction of which said order of sale was made were, at the time and long before said petition was filed, either paid off and discharged or long since barred. The prayer was for a *certiorari.* Appended to this petition is what purports to be an affidavit of James Wilcoxon purporting to have been taken before a Justice of the Peace on the 23d of May, A. D. 1881, in the State of Ohio, alleging that he had married the sister of Jacob Foreman; that he was acquainted with his family, and that the following (naming the appellees) are his heirs.

The appellant upon the same day filed his motion to quash the petition upon the grounds that it was not sworn

to or signed by the parties; that they were not parties to the proceedings in the Probate Court, nor do the records of the County Court show that they have any interest in the estate; that if they have any rights they have remedies both at law and in equity; that the paper purporting to be an affidavit is not properly verified; that the petition does not set up facts sufficient to authorize the issuing of a *certiorari*. This motion was overruled.

Following this and upon the same day the return of the County Judge was filed. The return is prefaced with the words: "In response to the mandate of the honorable the Circuit Court in this cause." The return consists of a certified copy of the proceedings relating to the sale of the land upon the petition of Deans, the administrator, and the original paper in the matter of the estate of Foreman referred to in the petition for the order of sale.

Upon the filing of this return the administrator and appellant moved to quash it upon the ground that it was made without the intervention of a *certiorari*, and because it was otherwise improperly made. There seems to have been an order made to proceed to hearing, but the record does not disclose it. At any rate we find the appellant excepted to such an order upon the ground that a writ of *certiorari* could only be made returnable and hearing had in proceedings of this character in term, and that the court could not hear and determine the matter in vacation. On the same day the final order of the Circuit Court was made. In that decree the court recites: "Return to the order upon writ of *certiorari* heretofore granted in this cause having been duly made to this court." The order was that the motions of the administrator be denied, and that the decree of the County Court authorizing the sale be vacated and annulled.

Attached to the transcript of the record of the judgment of the Circuit Court, and filed as a part of the record of the

matter of the administration of the estate of Foreman in the County Court, are almost one hundred and fifty pages of matter embracing appraisements and other matters. Reference to this portion of the record has already been made, so far as it shows the status of the debt upon the existence of which, together with the exhaustion of personal assets, the jurisdiction of the County Court was brought into operation for the purpose of directing the sale ordered.

This is a part of the record, and to the extent it is necessary to refer to it we shall do so without inserting here or elsewhere, alluding to other portions which, while they properly accompany the transcript of the record of the County Court in the matter of the administration of the estate, being a part thereof, yet a large part of the matter has no material bearing upon the matters involved in this appeal.

From the order named, vacating and annulling the proceedings of the County Court, this appeal is taken.

The errors here assigned are:

First, That no *certiorari* ever issued from the Circuit Court, and none appears in the transcript of the record.

Second, That while the return of the County Court recites that it is made in obedience to a mandate of the Circuit Court, no such mandate appears in the record.

Third and fourth, That no order was made upon the amended petition for the issue of a writ of *certiorari*, and that the proceedings of the Circuit Court were extra judicial, irregular and void.

Fifth, That a writ of *certiorari* could only be returnable to a term of the court, and could not be heard in vacation.

Sixth, That the allegations in the petition did not constitute a sufficient ground for granting a common law *certiorari*.

Seventh and eighth, That neither of the petitions were properly sworn to, nor were they signed by the petitioners.

Ninth and tenth, That it does not appear that the alleged petitioners were parties to, or interested in, the proceedings in the County Court, or if interested that they would be concluded in their rights by the proceedings in said court, and that if they had any rights they had remedies, both at law and equity.

Eleventh, That it does not appear by the record of the County Court that the debt had been paid, barred, or in any way discharged; but the contrary, and that the debt was admitted.

Twelfth, That the County Court had jurisdiction, and the proceedings therein were according to law and should not have been vacated.

Thirteenth and fourteenth, That the record of the proceedings in the County Court is regular; that nothing *dehors* thereto can be considered upon *certiorari*, and no illegality or irregularity of proceeding is shown.

*Geo. Wheaton Deans* for Appellant.

That an appeal lies to this court from the judgment of the court below in proceedings in *certiorari* we hold and cite: 22 Ill., 107; 30 N. Y., 72; 44 Ala., 478; 65 Maine, 160.

We hold that the proceedings which, by the record, appear to have been holden before J. M. Baker, Judge of and in the Fourth Judicial Circuit of Florida, were null and void, irregular and extra judicial in that—

First, The petition for the issue of the writ, and upon which the writ was ordered, did not allege grounds sufficient upon which the writ could issue; for that the petition did not allege that the errors complained of appear by the record of the proceedings. Emery vs. Brown, 67 Maine, and cases there cited.

Said petition did not allege that the petitioners were par-

ties to the proceedings in the County Court, nor does it appear by the record in the County Court that they, or any of them, were interested in the proceedings therein; and unless such be the case, as by the record aforesaid appearing, they had no right to the writ, and it is only parties to the proceedings who can bring the writ of *certiorari*. Hilliard, New Trials, 552; 42 Barbour, 530; Powell, Appellate Proceedings, 347, 348; 45 Barbour, 164.

Further—A *certiorari*, where the defect does not appear upon the face of the record, and the application alleging it is not verified, will not be granted. 22 Ind., 73.

The petitioners do not appear by the record from the County Court to be parties to, and they cannot be permitted in this proceeding to show that they were interested in the judgment of the County Court sought to be set aside, as the writ of *certiorari* can present only the record, and nothing *dehors* the record can be shown to obtain it. 49 Maine, 417; 23 Ark., 107.

Further—The truth is that neither the original petition nor the amended petition are verified by sufficient affidavit in that the original petition was not verified at all by the petitoners, or either of them, and the affidavit in the amended petition is of no effect, the authority and power of the party before whom it purports to have been taken to act as a Justice of the Peace, or to administer an oath, not being duly authenticated. 21 Geo., 207, 213; Tidd's Prac., 180.

And by the common law an affidavit of petitioner is necessary in all civil cases in *certiorari*. 7 Cowan, 538.

Further—It appears by the record filed in this court that no writ of *certiorari* issued in the proceedings, and, without the issuance of the writ, all proceedings were null and void. The record must show that the writ was issued. 30 Ark., 532.

Further—The record in this court does not show that any return was made to any writ of *certiorari*, nor does the record show any mandate to the County Court or Judge in connection with the proceedings; and without a writ and return thereto there was nothing before the Circuit Court, or the Judge of said court, upon which to base the judgment.

Further—Supposing any writ had issued, it could have been made returnable to a higher court only, according to the rules and practice in this State, at a regular rule day of said court, and the return upon it, or to it, could not have been heard by the court in vacation except under the regular rules of practice on the law side of the court, and for this reason, among others, the judgment rendered was extra judicial and void. 1 Overton, 81 and 368.

The common law writ of *certiorari* (and in this State the common law writ only obtains) runs only to the jurisdiction of the court whose proceedings it is sought to revise, and the regularity of its proceedings. Tidd's Practice, 398, and note on second page; 30 N. Y., 72; 54 Barb., 589; 44 Ala., 478; 28 Wis., 270.

Neither the *merits* of *the case* nor *conclusions* of *fact* can be *considered*. 32 Barb., 131; 14 Cal., 479; 13 Penn. St., 389; 12 Minn., 78; 11 Mich., 353; 18 Ill., 324.

There was no order for any writ to issue made upon the amended petition, or any action taken upon it by the court or Judge, as appears by the record, and its form or substance cannot be considered material in this court.

The motion which appears by the record to have been made to dismiss the petition for the issue of a writ of *certiorari* should have been allowed; also the motion which, by the record, appears to have been made to quash the proceedings, and return made, it not purporting to have been made on a return to a writ, and to have been made without

the intervention of a writ of *certiorari*, should have been allowed.

The record sent up from the County Court shows the court had jurisdiction of the subject matter under the statutes of the State of Florida, (and this was a proceeding in rem.,) and that its proceedings were regular ; but we hold that, as before stated, there was no proper and sufficient petition for the issue of a writ of *certiorari*, no writ issued, no return therefore to any writ, no legality in the proceedings, and no jurisdiction of the Circuit Court, or the Judge thereof, under the circumstances, to entertain the proceedings or render any judgment upon them, and that if the contrary was the case the record of the County Court would show the judgment appealed from to be wrong, and that it should be reversed.

*Cockrell & Walker* for Appellees.

The order of the Probate Court, based upon the petition of the administrator granting the sale, is erroneous. The petition is defective in—

1st. It does not show whether Foreman died testate or intestate.

2d. If testate, it does not show whether any authority was conferred by the will to sell for the payment of debt.

3d. It does not show whether the estate is solvent or insolvent ; and

4th. It does not allege affirmatively. that in fact *debts exist* against the estate.

Test the sufficiency of the petition by demurrer and what issue of fact is raised by the petition ? The existence, or non existence, of debts is not put in issue ; the only issue presented by the petition, the only issue determined by the court, was that the *schedule* annexed to the petition *exhibited* memoranda of certain claims, or a certain claim. Had is-

sue been joined on this allegation the pleader would have been required to prove, not the existence of the debt, but that the schedule annexed showed such a claim on an inspection of the schedule. 17 Fla., 128 ; McClellan's Digest, 86.

But waiving these defects of allegation, suppose the existence of debts for which the estate was liable had been distinctly alleged in the petition, was the existence of these debts " established " in the language of the statute ?

The debt was an open account, based upon the alleged appropriation of crops in the year 1839, forty-two years before the petition was filed. Was not this debt shown upon the face of the petition to have been extinguished by the lapse of time ? Concede the fact of presentation of this claim to an administrator in 1856 imparted to this claim the dignity of an adjudication, a solemn judgment, rendered upon proper process and pleadings, wherein a court of competent jurisdiction has ascertained the existence of the debt, and had adjudged that the administrator of the estate of Foreman should pay it, even such a judgment is presumptively satisfied by the lapse of twenty-five years. The court is referred for a full discussion of the subject to the decisions and cases cited in 59 Ala., 128, and 35 Ala., 642 ; 32 Ala., 75.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This is an appeal by the administrator from a judgment of the Circuit Court upon *certiorari*, whereby proceedings in the County Court for the sale of real estate to pay debts were annulled and vacated. We do not propose to consider the errors as assigned in the order of their assignment.

We have had occasion at this term, in the cases of Basnet vs. The City of Jacksonville and Edgerton vs. The

Town of Green Cove Springs, to announce our views upon the general subject of proceedings upon a common law writ of *certiorari*, and, as in this case, the question is involved, we deem it proper to state that we have no doubt of our jurisdiction upon appeal to review the proceedings of the Circuit Court here ; such is the practice in the courts of every State where a like jurisdiction to that of this court exists.

Believing that there is no doubt of our jurisdiction to review this judgment of the Circuit Court upon appeal, the first question which meets us upon opening its record is whether it has jurisdiction of a *certiorari* to the County Court to bring up the transcript of the record of its judgment in the matter of a sale of land to pay debts of a decedent upon the petition of the administrator.

In the State of Massachusetts, where there was a statute somewhat similar to that of this State, (Chap. 1627, Laws,) which gave an appeal to the Supreme Court, that being constituted the Supreme Court of Probate, to *any person*, (in our statute the appeal is given to "*any party*,") aggrieved by any decree, order or denial made by the Probate Court, it is held that a *certiorari* does not lie from the Supreme Court to the Probate Court.

In this case the judicial system of Massachusetts is likened to that of England, and the distinctions prevailing between the eclesiastical and temporal courts in England are deemed to be operative in Massachusetts—this conclusion reached from a review of the early judicial history of that State.   Chief-Justice Shaw, speaking for the court, says of the jurisdiction of the temporal and spiritual courts in England :   "That each jurisdiction acting within its proper sphere was cautious not to encroach on the proper and just jurisdiction of the other, and for that reason the secular courts never interfered by way of writ of error or

*certiorari* or mandamus processes, devised to re-examine and affirm or reverse judicial decrees; but merely by writs of prohibition and other process designed to restrain and prevent them from the exercise of a jurisdiction not conferred upon them."

Of the Probate Courts in that State he remarks that under the judicial organization there " the judicial proceedings in matters of probate were wholly independent, subject only to the appellate jurisdiction," and that " thus the distinction and entire separation between the jurisdiction of the ordinary or ecclesiastical court and that of the common law courts, with which all those conversant with the law and practice of England were always familiar, became as well settled in this province (Massachusetts) as in England." This decision of the Supreme Court of Massachusetts is cited with approbation in In re Haney, 14 Wis., 421. In the Court of Appeals of Maryland in the case of Durham vs. Hall, 3 Harr. & McH., 352, a *certiorari* to the Orphans' Court was quashed in 1795, while in 1793 the court determined " that no writ of error will lie to the Orphans' Court from the general court, but that a *certiorari* will." We find no explanation of this apparent inconsistency. Under an early statute of New Jersey all final sentences and decrees of the Orphans' Court where no appeal is given to the prerogative court were subject to removal by *certiorari* into the Supreme Court. Pennington's Reports, 914; 4 Halstead, 70. Such practice has prevailed in the State of Georgia, (T. W. P. Charlton's Reports, 151,) under the 6th section of the third article of the Constitution in force in 1808, and we find in the Supreme Court of Alabama a case in 1844 (Cawthorne vs. Weisinger, 6 Ala., 717, Judge Ormond delivering the opinion,) in which *certiorari* is suggested as the proper remedy by which a creditor "who may conceive himself injured by a rejection of his claim may re-

move the record into the Circuit Court and have the question reconsidered."

It is thus apparent that there is not perfect unanimity in the views entertained by the courts upon the subject, and that independent of some statutory or organic provision authorizing a *certiorari* to the Probate Court, it is at least doubtful whether the writ lies in such a case. In this State we think there is little room for doubt upon the subject, as by the express terms of the Constitution the jurisdiction of the County Court in probate matters is "subject to the direction and supervision of the appellate and equity jurisdiction of the Circuit Court as may be provided by law." We know nothing in the history of this State from which such a line of limitation of powers between the Probate Court and the other courts can be insisted upon as was the case in Massachusetts.

The obvious intent of the Constitution of this State is to make the County Court, in the exercise of this jurisdiction, subject to a general supervisory and directory as well as appellate power of the Circuit Court, and we think that whenever a writ of *certiorari* is the proper remedy to correct an existing evil in the Probate Court, the power of the Circuit Court to award it exists.

This brings us to the question whether the alleged heirs at law, not being parties to the proceedings to sell the real estate in the County Court, can have this writ to quash such proceeding.

As to an appeal or writ of error it is the rule that a party to the proceeding can alone prosecute it. We have examined all the cases upon the subject which we could find, and while we are left in some doubt upon the subject we think that the heir has such an interest in the subject that he is entitled upon a proper case shown in the discretion of the court to a *certiorart*. 33 Mich., 526 ; 12 Wend., 234 ; 3 Mass., 229.

The next question here is, whether the Circuit Court obtained jurisdiction of the subject-matter, there being in the record no writ of *certiorari* as is alleged by appellant. By reference to the case as stated it will be found that upon the filing of the petition with a partial record of the County Court in the matter of the estate of Foreman, the court endorsed on the petition, "let writ of *certiorari* issue as prayed." The return of the County Judge commences thus : " In response to the mandate of the honorable the Circuit Court in this cause," and the Circuit Court prefaces the final order with the words: "Return to the order upon writ of *certiorari* having been duly made to this court," &c.

The plain result from this record is, that while the court directed a *certiorari* to issue what did issue was according to the return of the County Court a " mandate," and according to the recital of the Circuit Court what it did issue was "an *order* upon the writ of *certiorari*." We do not find this order nor do we find a mandate or a writ of *certiorari* in the record, and we find the appellant here protesting and asserting at every stage of the proceeding that no such writ issued. The original writ of *certiorari* should always be sent to the Circuit Court with the return of the tribunal or officer to whom directed. Such is the rule governing a writ of error and the same rule obtains as to a *certiorari*, as there is no difference in this respect between the practice upon these writs. 6 Wall., 355 ; 22 How., 88.

It has been held that " where a writ of *certiorari* has been ordered by the Circuit Court or Judge, but not issued or returned with a transcript of the record, there is nothing before the court for adjudication though the case be docketed," (21 Ark., 264,) and that " it is essential to the jurisdiction of the Circuit Court in a proceeding by *certiorari* that the writ issue and be returned with a transcript of the

proceeding sought to be quashed, unless the writ and re-, turn are waived." 30 Ark.; 148 ; 23 Ark., 107. As to the form of the writ and its service, see 2 Evans' Pleading, 413 ; 9 Wheat., 526 ; 6 Pet., 166 ; 4 How., 590 ; 91 U. S., 146. Here nothing was waived, and as no writ of *certiorari* appears in this record, we think the court should not have proceeded without it to hear and determine the case. For this error we would be obliged to reverse this judgment, but as the matters involved in the appeal have been discussed by the parties, and as our judgment upon a review of the record is consistent with the judgment which would follow the want of a writ of *certiorari*, we will examine the matter as presented.

In this court, as we understand the view of the appellee, he maintains the correctness of the judgment of the Circuit Court upon two grounds.

The first is that upon the face of the return the County Court acted without jurisdiction ; and the second is that the debt alleged to exist was a stale claim.

The proceeding in the County Court was a petition to sell real estate to pay debts. As to the matter of jurisdiction, it is insisted, first, that the petition is defective in that it does not show whether Foreman died testate or intestate.

From the record of the County Court it abundantly appeared that the party filing this petition had been appointed administrator *de bonis non* of the estate of Foreman. The requirement of the statute is that the executor or administrator shall file his petition under oath, setting up the facts which authorize the sale, and if the petition purports to be filed by an administrator, and the evidence of his appointment is upon the records of the court, and he is appointed by that court, as in this case, certainly no additional evidence of the appointment is necessary, nor is there any

necessity of any other allegation. than that he is the administrator. It is not necessary that the administrator should append as an exhibit to each of his acts in the County Court a certified copy of his letters in order to give validity to the action of the court. The record here certified to the County Court shows his appointment, and the allegation that he is administrator, and the record of the administration of the estate before the Circuit Court disclosed that while there may have been a will, it was treated and held void and an administrator was appointed.

The second objection is that if the estate was testate it does not show whether any authority was conferred by the will to sell for the payment of debts. As we have said, the proper appointment of the administrator appears, and that negatives the existence of any valid will. In addition to this it may be said that the appointment of Deans as administrator, and that he was such administrator, is alleged and admitted by the petitioners in their petition for a *certiorari*.

The third objection to the jurisdiction is that it does not set up whether the estate was solvent or insolvent. No such allegation is required by the statute to be in the petition. Sec. 4, Chap. 1732, Laws. If the jurisdiction of the County Court to sell the real estate of decedents was restricted to solvent estates, the necessity of an allegation of solvency as a jurisdictional fact might perhaps be insisted upon, but the jurisdiction of the County Courts exists to sell the land of both solvent and insolvent estates. It is only necessary as to this particular matter that it appear that there is an estate, and if the facts, the existence of which is necessary to give jurisdiction in either a solvent or insolvent estate, are set up in the petition, it is sufficient. In this case the allegation is that there is no personal property of said intestate, and the court in its final order finds that the personal property was exhausted.

It is insisted further that the petition does not allege affirmatively that in fact debts exist against the estate. The allegation in the petition is that " the demands existing against said estate amount to the sum of twenty-two thousand six hundred and sixty-five dollars, as appears by the schedule hereto annexed marked A. and reference therein made, which he prays with the reference may be taken as part of this petition." We find schedule A. to be an account made out in favor of Augustus E. Bass and Job Bass, for the sum stated, and as an evidence of his correctness there is a reference in the body of it to the proof of the claim in the records of the estate; that proof is detailed in the statement of the case. The claim had been admitted by the administratrix. The petition sets up that this is a lawful debt and demand existing against the estate, and makes the claim as presented and the proof of it a part of the petition. This is clearly a sufficient allegation of the existence of the debt. It not only alleges its existence, but lays the proof of it before the court.

We had occasion to examine these jurisdictional questions in the case of Hays' Administratrix vs. McNealy, 16 Fla., 409; Emerson vs. Ross, 17 Fla., 122, and Price et. al. vs. Winter, 15 Fla., 103, and the conclusions there reached sustain our views here expressed.

The last ground upon which the judgment of the Circuit Court is sought to be sustained here is that the debt was extinguished by the lapse of time.

We do not propose to enter upon an examination or discussion of the cases cited upon this subject, or the principles of equity which prevail in respect to it.

In this case the administrator denies that these petitioners are the heirs at law of Foreman. He affirms the existence of this debt, and seeks to sell real estate to pay it. These petitioners allege that they are the heirs at law of Fore-

man, and while not denying the original existence of the debt, allege that is a stale claim. In the meantime the creditor, the existence of whose alleged debt is being made the basis of all these proceedings, is no party to the proceeding. We have had occasion at this term to examine to what extent the powers of the Circuit Court exist and its jurisdiction upon a *certiorari*, in the cases of Basnet vs. City of Jacksonville and Edgerton vs. Green Cove Springs. It does not extend to the determination of this question of stale claim, nor do we see how the fact that the petitioners are the heirs at law of Foreman can be made an issue or determined in this proceeding. It was not in issue in the proceedings in the County Court, and we cannot see how, upon a writ of *certiorari*, such a matter can be determined.

If the administrator is guilty of a *devast wit*, or if he is paying or seeking to pay debts which he should not, there is certainly a remedy, but that is not a *certiorari*, which, as a general rule, only goes to jurisdiction and legality or regularity in procedure. There are some cases which go beyond this, (29 Wis., 444; 69 N. Y., 411;) but even if the doctrine as thus modified is correct, this case is beyond it.

Judgment reversed, and the case will be remanded with direction to dismiss the petition.