In the Matter of the Guardianship of Robert Ellsworth Firmin, *non compos mentis,* Robert Ellsworth Firmin, by George E. Ijams, Acting Director, United States Veterans' Bureau, Veterans' Administration, and Geo. W. Burke, Chief Attorney, Veterans' Administration, next friends, v. W. J. Sanborn.

161 So. 555.
Division B.
Opinion Filed May 20, 1935.

*George W. Burke, James T. Brady,* Solicitor Veterans'

Administration, *D. B. White*, Assistant Attorney Veterans' Administration, *W. B. Johnson* and *Madeline A. Jacobson*, for Appellant;

*Roy P. Hamlin*, for Appellee.

ELLIS, P. J.—Robert Ellsworth Firmin is a mentally incompetent World War veteran, W. J. Sanborn was his guardian.

On September 28, 1928, Sanborn filed in the office of County Judge an annual return or account of the receipts and disbursements of his ward's estate. It embraced a period from September 28, 1927, to and including August 3, 1928. The account showed a total of $9,107.40 received and $9,058.54, disbursed leaving a balance of $48.86 on hand. Among the items which appeared on the credit side of that account were $55.00 paid to Duncan and Hamlin, Attorneys, and $8,600 invested on an order of the Probate Court in a real estate mortgage on improved property. The $8,600. investment was in a note of W. J. Sanborn, the guardian, secured by a first mortgage upon improved real estate.

Another annual account was filed covering a period from August 3, 1928, to and including August 3, 1929. The debit side of that account showed receipts including the balance of $48.86 amounting to $1,807.12. The credit side showed disbursements amounting to $1,730.43, leaving a balance of $76.69 caried forward.

Mr. Sanborn deposited his ward's money in the Bank of Mt. Dora to his individual or personal account, commingling the funds of his ward with his own. The account was not carried separately in the depositor's representative capacity. The bank failed and Mr. Sanborn in his annual account filed with the Probate Court credited himself with the balance of $48.86 and the sum of $500.00 which was also lost in the bank failure.

There were two other items entered upon the credit side of the acount: one amounting to $50.00, August 3, 1929, which Mr. Sanborn allowed to himself for especial services rendered in 1926 in transferring the estate matters from Cuyahoga County, Ohio, to Lake County, Florida, and an item of $108.42 which Mr. Sanborn allowed to himself as commission on money received and as full pay for "handling of the estate."

Mr. George E. Ijams, Acting Director, United States Veterans' Bureau, Veterans' Administration, as next friend of Firmin, and Mr. George W. Burke, Regional Attorney United States Veterans' Bureau, filed a petition in the Probate Court on October 20, 1932, in which it was prayed that the two accounts be reopened for consideration of the items allowed as above mentioned on the guardian's account and to falsify or avoid the account in those particulars.

The petition was overuled by the County Judge and the answer of Mr. Sanborn was sustained. An appeal was taken from that order to the Circuit Court and the Circuit Judge, Honorable J. C. B. Koonce, affirmed the judgment of the Probate Court.

In view of the conclusion reached by the Honorable Circuit Judge we deem it to be instructive to quote the language used by him which reveals the theory upon which he justified the order of the Probate Court in not falsifying the account of the guardian in the particulars mentioned, especially the items of $48.86 and $500.00 which were lost to the estate by the failure of the bank. The judge said:

"The principal objection presented to this Court by the appeal is the allowance of a credit to the guardian of five hundred dollars lost in the closing of the Bank of Mt. Dora. It is insisted by appellant that where a guardian deposits funds of his ward with his own, or commingles the funds

of his ward with his own, he thereby becomes personally liable for any loss which may come while the funds are so deposited. This court must concede as an abstract proposition of law the contention of appellant is supported by the great weight of authorities. It unquestionably seems to be a correct statement of the law. However, appeals from County Judge's Court in probate matters are addressed to the equity side of this Court, and it is the opinion of this Court that, while 'Equity follows the law' nevertheless, a court of equity will not permit a strict adherence to technicalities to work an injury to anyone, but will endeavor to 'temper justice' so that a reasonable and fair consideration may be given all concerned.

"It appears to this Court that had the funds of the guardian's ward been deposited in a separate account, the result would have been the same—upon failure of the bank, the money would have been lost. There is no charge, or no evidence that the guardian had any reason to suspect the bank to be in a precarious condition, and evidently he acted in good faith in leaving the money there, for he had a sizeable account of his own with the bank at the time.

"It is further insisted by the appellant that the funds of the ward should have been invested by the guardian so as to increase the estate. But it also appears that this deposit in the Bank of Mt. Dora was rather of a temporary nature, pending a transfer of funds from the Probate Court in Ohio.

"In this case it is also clear to the court that the circumstances are somewhat singular; the ward is hopelessly insane, his only heir is his mother who is wife of the guardian. It is a sad fact that the ward can never benefit by any increase in his estate. It is unlike an estate of a minor or infant who, upon reaching majority, would be entitled

to receive the benefit of prudent care by his guardian. It often happens that guardianships are entrusted to those who are not versed in the law, and who are performing their duties more·as a labor of love. This court is impressed with the idea that such is true in the instant case, and feels that it would be an unmerited punishment to a good-intentioned guardian to reverse the judgment of the lower court. Undoubtedly, the Probate Judge who was familiar with all the facts and circumstances of the case, and whom this court knows to·be most careful and cautious in his deliberations and judgments, must have entertained the views expressed above."

Mr. Ijams and Mr. Burke took an appeal from that order.

The questions presented and argued in appellant's brief involve the legality of those items of credit appearing in the guardian's account which show a loss to the estate on account of the bank's failure where the moneys of the ward's estate were carried in the private or personal account of the guardian and not to his account in his representative capacity.

Another question challenged an allowance in the guardian's account of more than a commission of five per cent. for services and whether the order of the County Judge allowing or approving the account was *res adjudicata* and binding on the ward, who is mentally incompetent, where the accounting had remained on file for a certain period of time without exception or objection.

·The approval by the County Judge of the Guardian's annual account is not the equivalent of a judgment which may not be collaterally attacked by the ward or some one in his behalf. The rule is that annual or partial accounts of a guardian, although approved by the court, have not

the force and effect of a final judgment and are in no sense conclusive of the correctness thereof unless made so by statute. See 28 C. J., 1239.

. Annual accounts are, however, *prima facie* evidence of their correctness, if made in conformity with the statute. It has been held that where the account shows expenditures by the guardian out of the corpus of the estate for the maintenance of the ward the burden is on the guardian to justify such expenditures by proof of an order of court authorizing them. See Nicholson v. Nicholson, 59 Tex. Civ. App. 357, 125 S. W. Rep. 965.

In this case the ward, Mr. Robert Ellsworth Firmin, is according to the record, an incompetent veteran within the meaning of Chapter 14579, Laws of Florida, 1929, who received remittances of money from the United States Veterans' Bureau. The Act requires guardians of such persons to send certified copies of their annual accounts to the office of the United States Veterans' Bureau having jurisdiction over the area in which the court to whom the accounts are rendered is located.

The record does not disclose that the mandate of the statute was obeyed and the brief of counsel for appellant expressly states that the statute in this regard was not observed.

Under the provisions of the "Uniform Veterans Guardianship Act, *supra,* and in the execution of one of its objects, we are of the opinion that the petitioners as next friend of Mr. Firmin had the authority to begin the proceedings for a reopening of the guardian's annual accounts and to surcharge and falsify the same.

The point that the guardian has credited himself with an amount on account of commissions upon money received is well taken. It appears that he charged six per cent. upon

the amount of money received in which was included the balance of $48.86 brought over from the account of the year before. The statute allows to guardians in such cases a commission of only five per cent. of the income of the ward during any year.

There is no claim for extra commission on account of extraordinary services, and there was no petition for nor hearing had for the extra allowance. See Sec. 2146 (12) C. G. L. Cum. Supp. 1932, Chap. 14579, *supra*.

The point made in the petition, and set forth in the brief as one of the questions involved, that the guardian is liable for the money deposited in the bank in his own name and commingled with his own funds in the credit to his account on the books of the bank, is also well taken. It is no answer that the bank failed and the money was lost by such failure through no fault of the guardian who also suffered personal loss of his own funds. That item amounts to five hundred dollars.

The learned judge in his opinion conceded that proposition to be correct and "supported by the great weight of authorities," but in an effort to "temper justice so that a reasonable and fair consideration may be given all concerned" declines to apply the rule of law.

The court said that if the funds of the guardian had been deposited in a separate account the result would have been the same on the failure of the bank. But that statement is not necessarily correct. There may have been a special trust deposit earmarked and set aside for the ward's benefit. The assumption that the result would have been the same merely begs the question; it takes the conclusion as a premise of the argument. The money while on deposit to the guardian's personal account augmented his credit and became liable for his personal debts. If he owed the bank

at its closing any debts he could set off his accounts against them. Chipley State Bank v. McNeill, 77 Fla. 827, 82 South. Rep. 292; Robinson v. Aird, 43 Fla. 30, 29 South. Rep. 633.

Chapter 14579, *supra,* mandatorily requires the guardian to invest the funds of the estate in such manner, or in such securities, in which the guardian has no interest as allowed by law or approved by the court. The purpose of that requirement was to at once protect the ward from the consequences of bank failures and the guardian against improvident investments. See Sec. 2146 (13) Cum. Supp. 1932 C. G. L., 1927.

Not only did the guardian disregard the generally recognized rule requiring the ward's funds to be carried in a separate and independent account and not commingled with the funds of the guardian, but the requirements of the statute law were disobeyed.

A guardian ordinarily is required to invest the funds of his ward, but it is a universal rule that if he invests it in his own name as an individual he is liable for any loss that may result irrespective of any question of good faith or honest intention on his part. *In re.* Bane, 120 Cal. 533, 52 Pac. Rep. 852, 65 Am. St. Rep. 197; Byne v. Anderson, 67 Ga. 466; *In re* Stude (179 Iowa 785), 162 N. W. Rep. 10; Jenkins v. Walter, 8 Gill and J. 218, 29 Am. Dec. 539.

Also a deposit in the individaul name of the guardian, his fiduciary capacity not being indicated, is improper and the guardian is responsible for any loss, regardless of any consideration of prudence and diligence. See 28 C. J. 1145; O'Connor v. Decker, 95 Wis. 202, 70 N. W. Rep. 286; Long on Domestic Relations, Sec. 183.

The reason for the rule is set out forcefully by Mr. Justice CASSODAY in the case of Williams v. Williams, in 55

Wis. 300, 12 N. W. Rep. 465, cited in appellant's brief. The learned Justice points out that the evil consists not so much in the account being in the individual name of the Trustee, as that in carrying it in such an account the identity of the trust fund is lost and in lieu thereof there is no obligation, contract or account upon which is impressed the equitable ownership of the trust. To say in such a case that the ward shall lose the property or fund and the trustee or guardian be absolved from all loss and exonerated from liability is not tempering justice but is imposing an undeserved burden upon a person who on account of his unfortunate mental condition is a ward of the court, and at his expense encourages the mismanagement of trust funds and makes possible in other cases innumerable frauds against those whose mental condition and weakness entitle them to rigid protection of the law. See Sec. 5893 C. G. L., 1927.

The order of the Circuit Court is reversed with directions to reverse the order of the County Judge with directions to reopen the account of the guardian and disallow the items mentioned as credits on the guardian's account.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.