**AMERICAN SURETY COMPANY OF NEW YORK, and JAMES TURNER, JR., as Administrator of the Estate of Dr. J. W. Turner, deceased, v. WILLIAM E. ANDREWS, non compos mentis, by N. D. Wainwright, Jr., as guardian.**

12 So. (2nd) 599                                    January Term, 1943
March 26, 1943                                              Division A
Rehearing Denied April 12, 1943

*William E. Rivers, Jordan, Lazonby & Dell,* for appellants.

*George W. Burke, T. Frank Landrum* and *Fielding & Duncan,* for appellee.

CHAPMAN, J.:

The record in this case discloses that Dr. J. W. Turner, on January 23, 1923, was by the County Judge of Levy County, Florida, appointed guardian of the person and estate of William E. Andrews, non compos mentis. The assets of the estate of the incompetent were delivered to and received by the guardian; by him managed, controlled and invested; and he filed a final report and account showing the control, management and investments by him made as guardian of the funds of the incompetent for the period of January 23, 1923 until September 20, 1937, when an order of the county judge based on the report and final accounts was entered approving without qualification the final report of accounts and investments so made as guardian, and the terms of the order of approval simultaneously discharged the guardian and a surety, viz, The American Surety Company.

It is not disputed by the interested parties to the suit that losses accrued from the investments as made by Dr. Turner, the guardian, and one of the essential questions presented for adjudication is where these losses shall fall i. e. whether the same shall be sustained by the estate of the incompetent or by the estate of Dr. Turner, now deceased, and represented here by James Turner, Jr., his administrator, or The American Surety Company, as surety.

The chancellor, from the evidence adduced, concluded and held that the guardian received funds of the incompetent and failed to account for the same in the sum of $12,000.00, and decreed a recovery thereof against the Turner estate, in behalf of N. D. Wainwright, Jr., a successor guardian for the estate and person of the incompetent. The decree so entered authorized a recovery against the guardian's bondsman, viz: The American Surety Company.

The guardian is shown by the record to have invested the funds of his incompetent ward in securities viz:

(1) Mortgage, dated December 31, 1929, N. B. Wadley and husband, B. C. Wadley, to Cedar Key State Bank, recorded February 15, 1930, in Mortgage Book "W", page 412, public records of Levy County, Florida; attached to which is note for $2,163.26, dated December 30, 1931, purporting to be signed by Boaz C. Wadley; together with assignment, Cedar Key State Bank to J. W. Turner, as guardian of William E. Andrews, incompetent, dated December 2, 1933, acknowledged December 8, 1933.

(2) Mortgage, dated October 15, 1932, J. A. Boothby and wife, Mollie Eudora Boothby, to Cedar Key State Bank; attached to which is note for $3,195.00, dated October 15, 1932, purporting to be signed by J. A. Boothby; together with assignment, Cedar Key State Bank to Dr. J. W. Turner, as guardian of William E. Andrews, dated December 8, 1933.

(3) Mortgage, dated July 1, 1933, Manuel Kepote and wife, Leah Kepote, and Alex Kepote, single, to Cedar Key State Bank; recorded September 11, 1933, in Mortgage Book "Y," page 429, public records of Levy County, Florida; attached to which is a note for $3,068.00, dated July 1, 1933, purporting to be signed Kepote Bros. by Manuel Kepote; together with assignment, Cedar Key State Bank to Dr. J. W. Turner, as guardian for William E. Andrews, incompetent, dated December 8, 1933; and mortgage, dated March 27, 1934; Manuel Kepote, single, to Cedar Key State Bank; together with assignment, Cedar Key State Bank to Fernando B. Johns, as guardian of the estate of William E. Andrews, non compos mentis, apparently covering assignment of last above described mortgage on personal property, and dated September. 22, 1937.

(4) Mortgage, dated November 17, 1926, J. T. Johnson and wife, Jennie Johnson, to J. W. Turner, as guardian for William E. Andrews, incompetent; recorded November 17, 1926, and recorded in Mortgage Book 19, page 34, public records of Columbia County, Florida; attached to which is note dated November 17, 1926, $1600.00 to J. W. Turner, as

guardian for William E. Andrews, incompetent, purporting to be signed by J. T. Johnson and Jennie Johnson.

The chancellor decreed that designated expenditures, reflected by the record as having been made by the guardian, coupled with the mortgage investments identified as (1), (2),. (3) and (4), *supra,* were each not only unauthorized but in contravention of applicable statute controlling investment of the funds of an incompetent; and that the evidence adduced established the uncollectibility of each of the mortgage securities and their utter worthlessness. These findings of fact are binding on this Court. See Kent v. Knowles, 101 Fla. 1375, 133 So. 315; Maxcy, Inc. v. Batement, 119 Fla. 490, 160 So. 745.

The case of Nusbaum v. Nusbaum, 152 Fla. 31, 10 So. (2nd) 661, involved an investment of the funds of an incompetent by the guardian. The funds were invested in a vacant lot at Daytona Beach 1925 by the guardian. The sum of $1234.00 (plus $150.00 as interest) of the incompetent was invested in the lot, and several years afterwards the lot was sold for $288.14. It was contended that honesty, good faith and sound business judgment were exercised by the guardian, coupled with a verbal approval of the county judge prior to the investment, and for these reasons the losses should rest on the incompetent and not the guardian. The courts below sustained these contentions.

We held therein that courts and guardians alike are charged with a knowledge of the law controlling the investments and expenditures of the funds of incompetents. Statutory authority must sustain not only expenditures but investments. The law speaks for those who by reason of affliction cannot speak for themselves. We, in part, said (text 110 So. [2nd] 662):

"Section 5913, C.G.L., confers on the County Judge the power to appoint guardians of insane persons domiciled in the State of Florida. The power of a guardian, so appointed over the person and property of a non compos mentis person shall be the same as conferred by law on guardians of infants. Section 5893, C.G.L., provides for the control and management of the money of an infant and enumerates the securities

in which the money of an infant may be invested by a guardian. Section 5894 C.G.L., authorizes the guardian, under certain conditions, with the permission of the County Judge, with the funds of an infant, to purchase, cultivatable lands for the use and benefit of the infant. While the power of the guardian in the case at bar to buy cultivatable land for his ward by statute may exist, it has not been made to appear from the evidence adduced that the building lot so purchased was cultivatable land contemplated by Section 5894. Where securities and the character of investments of the funds of a ward are prescribed by statute, the same, under usual and ordinary conditions, are controlling. The law speaks for a ward when by application or minority disability he is legally disqualified from being heard. See 25 Am. Jur. par. 87, page 57."

We are unable to find and have not been cited a statute or statutes or decisions of this Court authorizing or approving the investment of the funds of the incompetent by the guardian in the securities *supra*. See Sections 2130-2146; 5884-5894; 5913-5933, C.G.L.; Chapter 14579, Acts of 1929, Laws of Florida; Chapter 15064, Acts of 1931, Laws of Florida; Chapter 17474, Acts of 1935, Laws of Florida; Sections 293.01-294.12; 518.01-518.09, Fla. Stats. 1941. William E. Andrews is shown to be a World War Veteran. Dr. Turner, the guardian, was president of the Cedar Key Bank and invested the incompetent's money in a mortgage of the Gulf Homesites, and over the objection of the Veterans Administration, the Gulf Homesites mortgage was reassigned to the Cedar Key Bank, of which Dr. Turner was president, and some of the mortgages supra were assigned by the bank to the estate of the incompetent. These assignments were authorized by an order of the county judge's court dated April 24, 1934. The objections made by the Veterans Administration to the assignments were denied in the same order.

On September 20, 1937, the County Judge of Levy County entered an order on the final report of the guardian. The order found the report correct and the estate of the incompetent well managed. The four mortgages, *supra,* with other property, were held to be the property of the incompetent.

The order also found that the guardian had truly accounted for all the property belonging to the estate and that the accounts as reported were approved, "ratified and validated, fully in every respect whatsoever."

The order, in part, recited:

"The Court finds from said petition and the receipts thereto attached, together with other papers filed in this cause, that the said F. B. Johns, as guardian of the estate of William E. Andrews, incompetent, had been completely and fully settled with by said J. W. Turner, as preceding guardian of the person and estate of William E. Andrews, incompetent; and that there is no liability or responsibility whatsoever for and on behalf of said Dr. J. W. Turner, as guardian, or otherwise, and as principal on said guardian's bonds, or against J. S. Brush, R. A. Pope, B. C. Wadley, D. A. Andrews, Thomas W. Price, Wm. R. Coulter and American Surety Company, as securities on said guardian's bonds."

Counsel for appellants contend that since the investment in the mortgages, *supra,* by the guardian, of the funds of the incompetent, with other challenged expenditures of the funds shown to have been made by the guardian, were approved by an order of the County Judge's Court of Levy County on April 24, 1934; on June 26, 1936, the same court entered an order discharging Dr. Turner as guardian; "as to function but not as to liability;" that in a subsequent order dated September 20, 1937, the guardian was discharged and the American Surety Company, a bondsman of the guardian, was released and discharged from all liability under the bond; then these orders of the county judge's court are now conclusive and cannot be collaterally assailed in a court of equity, although the investments by the guardian in the mortgages may not have been legally authorized. The county judge had jurisdiction of the parties and the subject matter involved and was legally authorized to enter the orders and the issues presented by the bill of complaint are *res adjudicata.* Several Florida cases are cited to sustain this contention.

The answer to this contention is our previous ruling in the cause when the suit was before us on legal sufficiency of

the bill of complaint and a motion to dismiss on numerous grounds, inclusive of the want of equity. See Turner v. Andrews, 143 Fla. 88, 196 So. 449. A second petition for an interlocutory writ of certiorari was denied by this Court on January 9, 1942.

An attack collaterally was made by bill in equity on the orders of the county judge approving the correctness of a guardian's account and the investments as made by the guardian of the funds of an incompetent and was by this Court sustained in the case of In the Matter of the Guardianship of Robert Ellsworth Firmin, 119 Fla. 396, 161 So. 555, when we, in part, said (text 119 Fla. 401-2, 404) :

"The approval by the County Judge of the Guardian's annual account is not the equivalent of a judgment which may not be collaterally attacked by the ward or some one in his behalf. The rule is that annual or partial accounts of a guardian, although approved by the court, have not the force and effect of a final judgment and are in no sense conclusive of the correctness thereof unless made so by statute. See 28 C.J. 1239. Annual accounts are, however, *prima facie* evidence of their correctness, if made in conformity with the statute. It has been held that where the account shows expenditures by the guardian out of the corpus of the estate for the maintenance of the ward the burden is on the guardian to justify such expenditures by proof of an order of court authorizing them. See Nicholson v. Nicholson, 59 Tex. Civ. App. 357, 125 S. W. Rep. 965. . . .

"A guardian ordinarily is required to invest the funds of his ward, but it is a universal rule that if he invests it in his own name as an individual he is liable for any loss that may result irrespective of any question of good faith or honest intention on his part. In re: Bane, 120 Cal. 533, 52 Pac. Rep. 852, 65 Am. St. Rep. 197; Byne v. Anderson, 67 Ga. 466; In re Stude (179 Iowa 785), 162 N. W. Rep. 10; Jenkins v. Walter, 8 Gill and J. 218, 29 Am. Dec. 539."

In the case of Pitts v. Pitts, 120 Fla. 363, 162 So. 708, this Court held that an order of the county judge may be attacked and set aside as invalid by direct appeal or by

certiorari or by bill in equity, because the circuit court, under Section 11 of Article V of the Florida Constitution, has supervisory jurisdiction of the probate jurisdiction of the county judge. We said, in part (text 120 Fla. 369) :

"While ordinarily the appropriate method of attack on an invalid order or judgment rendered by a court against a complaining party who was never legally bound in the court rendering the attacked judgment or order, is by certiorari instituted by him in a court of superior jurisdiction to have the invalid judgment or order brought up into the superior court and there quashed as not according to the essential requirements of law to become binding on the petitioners in certiorari (See: Deans v. Wilcoxon, 18 Fla. 531, cited with approval in State *ex rel.* Landis v. Crawford, 104 Fla. 440, 140 So. Rep. 33, text 335) the .jurisdiction of the Circuit Court in probate matters in both appellate and supervisory (Section 11, Article V, State Constitution) of matters arising before County Judges pertaining to their probate jurisdiction, or to the estates and interests of minors. Therefore in probate matters, an order of County Judge sittting as a Court of Probate, is subject to being attacked and set aside as invalid, either on direct appellate proceedings, or by certiorari, or by bill in equity as filed in this case, where the invalid order was made without jurisdiction in the Probate Court to enter such an order at the time it was actually entered, such as where the order was summarily entered without notice or hearing in a case where the statute required a notice and hearing, etc., to be observed before any such order was attempted to be made in a pending probate matter.*

The rule *supra* was recognized by this Court in the recent case of McBride v. McBride, 142 Fla. 663, 195 So. 602. See Carroll v. Carroll, 127 Fla. 226, 172 So. 916; Grant v. Amiker, 120 Fla. 356, 162 So. 712; Ex Parte Hansen, 120 Fla. 333, 162 So. 715; Link v. Friou, 116 Fla. 337, 156 So. 719; Allen v. Allen, 111 Fla. 733, 150 So. 237; Cole v. Cole, 106 Fla. 226,

---

* For the use of equitable proceedings in such cases see: Smith v. Smith, 210 Fed. 947; Glover v. Brown, 32 Idaho 426, 184 Pac. Rep. 649; Schmitz v. Martin, 149 Minn. 386, 183 N.W. Rep. 978; Boulton v. Scott, 3 N.J.L. 231."

143 So. 235; First Trust & Savings Bank v. Henderson, 101 Fla. 1437, 136 So. 370; Opitz v. Morgan, 68 Fla. 469, 67 So. 67; Benedict v. Wilmarth, 46 Fla. 535, 35 So. 84; Dean v. Wilcoxon, 25 Fla. 980, 7 So. 163; Sanderson v. Sanderson's Adm'rs, 17 Fla. 820; Ritch v. Bellamy, 14 Fla. 537.

Counsel for appellants cite Taylor v. Martin, Adm't., 145 Fla. 253, 198 So. 827; Mitchell v. Bogue, 142 Fla. 787, 196 So. 306; Perry v. Farber, 115 Fla. 410, 155 So. 839; Fieche v. R. E. Householder Co., 98 Fla. 627, 125 So. 2. These cases consider generally the rights of wards in real estate or personal property and are clearly distinguishable from the cases supporting an accounting in equity of a non compos mentis person.

Insane persons are wards of the State and at common law equity courts had the care of the persons and estates of insane persons. See First Nat. Bank v. McDonald, 100 Fla. 675, 130 So. 596. Insane persons are wards of the State and the State is under special duty to protect them and their property. See Ex Parte Hansen, 120 Fla. 333, 162 So. 715. Likewise the responsibility is on the courts under the law to care for incompetents. See Turner v. Andrews, *supra*.

We have given careful consideration to the contentions of the respective parties and we have failed to find error in the record and accordingly the decree appealed from is hereby affirmed.

It is so ordered.

BUFORD, C. J., TERRELL and ADAMS, JJ., concur.