564 So.2d 1141 (1990)
Lucille McGINNIS, Individually and As Guardian of the Person and Property and As Personal Representative of the Estate of Jacob Kanevsky, Deceased, Appellant,
v.
Ilya Petrovich KANEVSKY, Liudmila Petrovna Kanesvskaya, Pesia Kaller, Sofia Mikhailovna Kaller (Taranova), Valentina Mikhailovna Kaller (Forominkyh), Piotr Meerovich Feller, and Abram Meerovich Feller, Appellees.
No. 89-1530.
District Court of Appeal of Florida, Third District.
July 3, 1990.
Daniel P. Tunick, Miami, for appellant.
Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., and James R. George, Miami, for appellees.
Before SCHWARTZ, C.J., and JORGENSON and LEVY, JJ.
SCHWARTZ, Chief Judge.
Lucille McGinnis, formerly the guardian of Jacob Kanevsky and now the personal representative of his estate, appeals from an order approving the report of an "independent expert" that previously authorized guardianship fees were excessive and should be reduced.[1] We reverse.
In 1981, McGinnis was appointed guardian of Kanevsky's person and property and served until he died intestate in October of 1983. During those twenty-nine months, the trial court, in ten separate orders, *1142 awarded $78,890 in interim fees for her services.
Upon Kanevsky's death, McGinnis was appointed personal representative of his estate. Probably because of this fact, McGinnis did not obtain an order of discharge as guardian and the guardianship was never formally terminated. During the administration of the estate, Kanevsky's heirs[2] not only objected to various items for which McGinnis sought payment as personal representative, but claimed that the fees she had been previously awarded as guardian were improper. The trial court appointed an "independent expert" to resolve issues relating to the final accounting. Although McGinnis contended that the expert's authority did not extend to the guardianship question, the resulting report concluded not only that he possessed that authority, but, on the merits of the issue, that the reasonable value of McGinnis's services as guardian amounted only to $17,000 as guardian of the property and $13,515 as guardian of the person rather than the total of $78,890 which had already been awarded.[3] Over McGinnis's objection and motion to amend the report, the trial court held that the expert had properly ruled on the guardianship issue and adopted his report; thus, requiring, in effect, the guardian to disgorge the $48,375 difference.[4]
Based upon both procedural and substantive grounds, we conclude that the order on review is incorrect. In sum, we hold that guardianship fees, properly authorized by the probate court, may not be set aside after the ward's death merely because his heirs consider that the awards were too high.

I
The order on appeal approves the report of a so-called "independent expert." In our judgment, the "expert" lacked authority even to make his findings or recommendations.
1. First, the appointment of an "independent expert" finds no support whatever in the applicable probate rules and his report may well be considered a nullity on that ground alone.
2. Even if, however, the office is deemed to be an authorized equivalent of a special master, see Fla.R.Civ. P. 1.490(b), the report of the one involved in this case is nonetheless fatally defective. This is because the operative order below authorizing review by the independent expert  the equivalent of an order of reference to a master  did not include the subject matter now in question. To the contrary, while an initial order appointing the expert specifically authorized him to "reconsider the amount of fees awarded Lucille McGinnis, as guardian of the person [and property]," this provision was challenged by motion of the guardian; in the amended order which resulted, this provision was specifically excluded.[5] It is well settled that the explicit deletion of a particular item from an operative document demonstrates the intention of the author that the contents of the omitted material shall no longer be in effect. See 4 Williston on Contracts § 622, at 788-89 n. 20 (Jaeger 3d ed. 1961); see also Goldbloom v. J.I. Kislak Mortgage Corp., 408 So.2d 748 (Fla. 3d DCA 1982), pet. for review dismissed, 421 So.2d 517 (Fla. 1982); Southeastern Home Mortgage Co. v. Roll, 171 So.2d 424 (Fla. 3d DCA 1965). Because it is equally well-settled that a master has *1143 no power to exceed the terms of a reference, Horner v. Horner, 423 So.2d 605 (Fla. 3d DCA 1982); Sniffen v. Sniffen, 382 So.2d 823 (Fla. 4th DCA 1980); Waszkowski v. Waszkowski, 367 So.2d 1113 (Fla. 3d DCA 1979), cert. denied, 378 So.2d 350 (Fla. 1979), the "expert's" findings and recommendations on this issue have no effect and the trial court therefore erred in confirming them.

II
An approach to the merits of the order below, which we now also consider, must commence with the undisputed fact that each award of guardianship fees was made by the trial court upon appropriate application of the guardian, without misrepresentation or impropriety of any kind,[6] and in accordance with the then existing statute concerning notice.[7] There is no basis whatever for permitting the revisiting of these duly entered orders long after they had been executed and become final.
1. It is basic to our legal system that appropriately entered judgments and orders may not be set aside unless explicitly authorized upon cogent and legally specified reasons. See Austin Tupler Trucking, Inc. v. Hawkins, 377 So.2d 679 (Fla. 1979); Kippy Corp. v. Colburn, 177 So.2d 193 (Fla. 1965); In re Estate of Beeman, 391 So.2d 276 (Fla. 4th DCA 1980). There is no such authority for the order now before us. Even section 744.424(2), Florida Statutes (1987),[8] upon which the appellees rely, specifically precludes objections to items in final returns if, as here, "the items have been previously allowed." Similarly, Florida Rule of Probate and Guardianship Procedure 5.700(a) and In re Guardianship of White, 140 So.2d 311 (Fla. 1st DCA 1962), provide only that the acceptance of an "annual financial return" does not prevent the reconsideration of expenditures contained in the return. They have nothing to do with fees and costs approved, as were these, by individually considered prior authorizations entered after hearing. Compare also Estate of Conger v. Conger, 414 So.2d 230 (Fla. 3d DCA 1982) (no previous order); In re Estate of Feldstein, 292 So.2d 404 (Fla. 3d DCA 1974) (same).
2. Even if the orders were somehow subject to review on some lawful basis, none is presented in this case. White itself indicates that the amounts contained in an approved accounting are "prima facie" evidence of their propriety. In this case, there was nothing to overcome this presumption. The "independent expert" simply disagreed with the earlier determinations of the trial court as to the amounts awarded. If this may be the basis of an ex post facto vacation of a previous order or judgment, none will ever stand. Cf. Pross v. Pross, 72 So.2d 671 (Fla. 1954) (mere disagreement *1144 with fees awarded by court insufficient to warrant reversal); Daniels v. Weiss, 385 So.2d 661, 664 (Fla. 3d DCA 1980) (disagreement with verdict not enough to warrant reversal).
3. Finally, and most important, an heir of a now-deceased ward may not be heard to challenge orders like these. Ash v. Coconut Grove Bank, 448 So.2d 605, 607 (Fla. 3d DCA 1984). As has been indicated, see supra note 7, the court is concerned only with the welfare of the ward himself in the administration of what are, after all, only his funds. See Bergman v. Serns, 443 So.2d 130 (Fla. 3d DCA 1983), pet. for review dismissed, 450 So.2d 486, 488 (Fla. 1984). Thus, White indicates that the approval of an accounting may be "collaterally attacked by the ward or someone on his behalf." White, 140 So.2d at 314 (emphasis supplied). This does not include those who may inherit the ward's estate. It is clear, to the contrary, that they are only contingent or potential beneficiaries who cannot complain that any expenditures on behalf of the ward have diminished what they may eventually receive and thus are not interested parties in the administration of the guardianship.[9] See Ash v. Coconut Grove Bank, 448 So.2d at 607 (mother not "interested person" in hearing on petition for reimbursement for bank's care of ward); Guardianship of Price v. Murfee, 408 S.W.2d 756 (Tex.Civ.App. 1966); Craycroft v. Craycroft, 250 S.W.2d 458 (Tex. Civ.App. 1952) (son not "interested aggrieved party" in guardianship estate); Jones v. Eastham, 36 S.W.2d 538 (Tex.Civ.App. 1931). Thus, the appellees do not fall within the requirement of Florida Rule of Probate and Guardianship Procedure 5.700(a) that an objection may be filed only by "a person interested as creditor, or otherwise... ." See Craycroft, 250 S.W.2d at 259-260.[10]
The effect of the order below is very unwisely to permit the intrusion of the relatives and devisees of the ward into the administration of the guardianship in order to preserve their alleged interests in the assets of the ward. We do not agree with any such result.
Reversed.
LEVY, J., concurs.
JORGENSON, Judge, dissenting.
I respectfully dissent. In my view, the probate court's jurisdiction to monitor the estate's administration and preserve the assets of the estate allowed it to re-examine its previous orders, entered without notice, disbursing funds to the guardian.
The procedural posture of this case is unusual because the guardian's fees were not challenged through objections filed to the guardian's final accounting. Although the guardian filed a final accounting, she never obtained an order of discharge. Because the Russian heirs  the real parties in interest who challenged her fees  were not known to exist when McGinnis filed her final account, they challenged the payments upon McGinnis's filing of her final accounting in the probate proceeding. Nevertheless, I believe that the trial court was authorized to re-examine its prior orders disbursing guardian's fees. "A circuit court, sitting in its probate capacity, has inherent jurisdiction to monitor the administration of an estate and to take such appropriate action as it may deem necessary to preserve the assets of the estate for the benefit of the ultimate beneficiaries." Estate of Conger v. Conger, 414 So.2d 230, 233 (Fla. 3d DCA 1982) (citation omitted); see also In re Estate of Feldstein, 292 So.2d 404 (Fla. 3d DCA 1974) ("Even if the beneficiaries lacked standing *1145 the court on its own motion may require an accounting or evidence concerning the estate assets from the personal representative").
The guardianship statute then in effect and the guardianship rules allow the court to revisit orders previously issued which disbursed fees. Section 744.424(2), Florida Statutes (1987), provides that
(2) In annual and final returns the guardian shall be entitled to credit for reasonable sums that he has paid to an attorney for expenses and services rendered to the ward or to the guardian on behalf of the ward and to credit for his own reasonable expenses in connection with the guardianship. Objections may be made to the allowance of the items in the manner specified in the Rules of Probate and Guardianship Procedure, unless the items have been previously allowed. (Emphasis added.)
Florida Rule of Probate and Guardianship Procedure 5.700(a) states:
After the filing of the accounting, a person interested as creditor, or otherwise, may file objections to any item in writing within 30 days after filing, or within 30 days after service of a copy when such service is required, specifying the grounds of objection. No item previously approved by the court on notice shall be subject to objection. (Emphasis added.)
The rule allows only those orders entered without notice to be subject to objection. The orders revisited by the trial court were such orders and are subject to collateral attack. In re Guardianship of White, 140 So.2d 311 (Fla. 1st DCA 1962). In White, the court stated:
[A]pproval by the county judge of a guardian's annual account is not the equivalent of a judgment which may not be collaterally attacked by the ward or someone in his behalf; the rule being that annual or partial accounts, although approved by the court, have not the force and effect of a final judgment and are in no sense conclusive of the correctness thereof unless made so by statute. They are, however, prima facie evidence of their correctness if made in conformity with the statutes.
See also Stevens v. Hooks, 125 So.2d 581 (Fla. 2d DCA 1960) (same).
I do not believe that the position I take today would, as Chief Judge Schwartz fears, allow anxious potential heirs to challenge the spending habits of their incompetent relatives. In this narrow factual scenario, where the guardianship remains open and no final accounting was filed, the trial court in its probate capacity properly revisited its orders entered in the guardianship proceeding.
I would affirm.
NOTES
[1] The order is appealable under Florida Rule of Probate & Guardianship Procedure 5.100 as a final order which determines "rights of any party in any particular proceeding in the administration of the estate of a decedent or ward... ."
[2] Through the efforts of McGinnis and the guardian ad litem of the unknown heirs, various heirs, including residents of the Soviet Union, were located.
[3] The expert's conclusion concerning the application for fees as personal representative is not an issue on this appeal.
[4] This would be accomplished, at least in part, by deducting this amount from the sums to be granted McGinnis as personal representative of the estate.
[5] The relevant provision of the amended order provided simply:

ORDERED AND ADJUDGED that LYLE DONALD HOLCOMB, JR. is hereby appointed as an Independent Expert to review objections, if any, made to the final accounting of the Personal Representative and make such determinations as to any such objections that will be conclusive and binding upon the parties....
[6] The presence of any such factor would presumably permit the court to set aside a previous order under Fla.R.Civ.P. 1.540. See FPR 5.025(d)(2). But none exists here.
[7] Section 744.108, Florida Statutes (1981) provided:

A guardian of the person or of the property shall receive a reasonable fee for his services to be fixed by the court after such notice as the court shall require.
The lack of any requirement for further notice reflects the idea that, in the case of a guardianship, the ward and his estate are the only interested parties. Insofar as these interests may be contrary to those of the guardian seeking fees, they are represented and safeguarded by the probate court itself. See Ash v. Coconut Grove Bank, 448 So.2d 605, 607 (Fla. 3d DCA 1984). (Indeed, in this case, the record shows that at least one of the applications for fees was reduced by the trial court.) This approach to the question of those cognizably interested in the guardianship estate  which excludes, among others, those who might take by gift or inheritance from the ward  continues to be reflected even in the new and far broader guardianship law. It provides in section 744.108(5), Florida Statutes (1989):
(5) A petition for fees or expenses may not be approved without prior notice to the ward, guardian, and attorney. [e.s.]
[8] 744.424 Attorney's fees and expenses. 

* * * * * *
(2) In annual and final returns the guardian shall be entitled to credit for reasonable sums that he has paid to an attorney for expenses and services rendered to the ward or to the guardian on behalf of the ward and to credit for his own reasonable expenses in connection with the guardianship. Objections may be made to the allowance of the items in the manner specified in the Rules of Probate and Guardianship Procedure, unless the items have been previously allowed.
[9] By like reasoning, potential heirs or devisees would be given standing to challenge the supposedly excessive spending habits of a competent person during his lifetime. Similarly, if the ward had an extant will leaving his estate to a charity, it would be a proper party in the pre- or post-mortem determination of the appropriate expenditures of the assets from the guardianship. Clearly, these examples cannot be and are not the law. The point here is that just as it is obviously for the competent person to spend or misspend his assets as he pleases, so it is up to the guardianship estate, regulated by the guardian and the court, to do the same without the interference or concern with the totally non-altruistic wishes of the ward's relatives or legatees.
[10] See supra note 7.