645 So.2d 1008 (1994)
SUN BANK AND TRUST COMPANY, Appellant,
v.
John G. JONES, Appellee.
No. 93-1861.
District Court of Appeal of Florida, Fifth District.
September 30, 1994.
Rehearing Denied December 12, 1994.
*1010 Charlie Luckie, Jr. of McGee, Luckie & Dayton, P.A., Brooksville, for appellant.
Gene H. Auvil of Gene H. Auvil, P.A., Brooksville, for appellee.
W. SHARP, Judge.
Sun Bank and Trust Company, the personal representative of the estate of Donald Nichols, appeals from an order rendered by the court handling Donald's guardianship, which denied Sun Bank's objections to the Guardian's Petition for Discharge and Final Report filed by Donald's guardian, John Jones. Sun Bank objected to all fees proposed to be paid and those previously paid to Jones and to Jones' attorney for all services and costs rendered in trying to implement Jones' "home plan" for his ward, Donald. The court refused to allow a hearing on these matters because it ruled it previously approved prior accountings (through June 26, 1992), which authorized payment of these contested fees. It relied on McGinnis v. Kanevsky, 564 So.2d 1141 (Fla. 3d DCA 1990). We reverse.
In reviewing this case, we looked closely at the record on appeal. Based on the record, we conclude the facts of this case are not in material dispute. The errors that occurred in this case are errors of law and stem in part from faulty memories of what occurred procedurally in court, over a considerable time period. The following is a summary of the record. It is necessarily lengthy.
Donald was a retired military veteran. He was widowed and lived with his only child, Donald Jr. and Linda, his son's wife, in their home in Hernando County, Florida, in the early 1980's. Donald acquired several parcels of real estate and rental properties located in Hernando County and central Florida. After Donald Jr. died, Donald continued to live with Linda and his two young grandchildren.
Some problems arose between Linda and Donald. In 1986, Donald moved to an apartment near Linda's residence. He traveled. When he returned to Hernando County, he moved into a different residence where he lived alone for a short time.
In 1987, Donald was charged with two counts of committing lewd and lascivious acts in the presence of a child. He pled nolo contendere and was placed on community control for two years. After he violated his community control in 1988, Donald was sentenced to three years in prison.
Donald never served any time in prison, however, because he was found to be mentally incompetent. Jones, a friend of Donald's from the military, was appointed to serve as Donald's plenary guardian. Linda had declined to serve in that capacity.
Donald was first placed in a secure psychiatric facility in Tampa, Florida. Jones dealt with his ward's rental properties in Hernando County, his personal property, real estate interests, intangible properties, and pension income. In 1989, the Tampa facility indicated it could no longer keep Donald. Jones helped place and move him to another psychiatric hospital facility at the Veteran's Administration Medical Center in Tuscaloosa, Alabama.
Donald was unhappy and depressed in Tuscaloosa. In 1990, Jones conceived of a plan to move Donald back to Hernando County. Jones proposed to sell Donald one-half of the property then owned by Jones and his wife, and build his ward a three-bedroom, two-bath home on that property, next-door to their own residence. Jones planned to hire a live-in caretaker couple to look after Donald. Jones and his wife would be available to assist in supervising his care.
In a petition filed September 13, 1990, Jones sought the court's authorization to carry out his "home plan" for Donald. He described the real estate to be sold to his ward (originally four acres, later amended to *1011 two acres), the price (the current appraised value of $39,500.00, later amended to $19,735.18), and how he planned to pay for the project (all cash for the land, $13,000 cash to the contractor, and the balance owed on the house and other improvements, to be financed with a $60,000.00 mortgage to Sun Bank). The "home plan" would cost Donald at least $92,700.00.
In the petition, Jones also summarized the value of Donald's net assets at $275,000.00, of which $90,000 was liquid. He projected Donald's net annual income at $47,500.00, and the costs of Donald's living expenses at $39,000.00 per year, once he returned to live in Hernando County. The petition also mentions "criminal accusations [against Donald] heretofore made by public authorities," and the fact that doctors at the Tuscaloosa facility approved of his "home plan" for Donald.
The petition does not show that a copy of it was mailed or served on anyone. Nor is there in this record any notice of a hearing date on the petition. Pursuant to section 744.446, any transaction potentially involving a conflict of interest between guardian and ward must be approved in advance by the court, and pursuant to section 744.447 notice of such petition must be given to the ward, the next of kin, and other "interested persons."
However, in an order filed on October 10, 1990, the court states that it held a hearing on the "home plan" on October 5, 1990. The order also states that "formal notice" of the petition and notice of the hearing were given to "interested parties." Copies of the order were certified as having been mailed to Donald, Linda, and the medical center in Tuscaloosa. At that hearing, the court approved the "home plan" for Donald.
On October 18, 1990, Linda filed an answer to the "home plan" petition. She also filed a motion to stay implementation of the "home plan," and a motion to rehear and set aside the order which approved the plan. Linda argued the "home plan" created a serious conflict of interest between guardian and ward, that it would primarily benefit Jones, and that it was not in Donald's best interest because he would receive diminished medical and psychiatric care if the plan were carried out.
In her motion for rehearing, Linda alleged that the court had actually considered the "home plan" at an ex parte hearing, without notice to her, on October 4, 1990, not October 5, 1990, as recited in the order. She pointed out that after receiving "formal notice,"[1] she should have been given twenty days within which to file an answer or respond to the petition. Fla.Prob.R. 5.040(a)(2). She alleged the twenty days after service on her expired on October 8, 1990, and the court proceeded prematurely to consider the petition on its merits prior to that date.
In an order filed November 13, 1990, the court denied Linda's motions as "untimely," although they were filed only eight days after the order approving the "home plan" itself was filed. However, the order in fact "stayed" the prior order approving the guardian's "home plan" through December 6, 1990, unless Linda showed good cause to the court why the home plan order should not be carried out.
On November 9th, Linda filed objections to the form of the proposed order, which was later filed November 13, and on December 3, 1990, Jones filed a motion to strike objections to the "home plan" filed by the State of Florida. The state's objections are not in the record on appeal, but they were also apparently filed after the court's ex parte hearing on the "home plan."
These matters culminated in a hearing before the court on December 4, 1990. At this hearing, Linda's attorney continued to object to the "home plan" as a conflict of interest. She also asserted Linda's right to have a full hearing on her objections, since the ex parte hearing on the "home plan" was held before twenty days had lapsed after the guardian's "home plan" petition was served on her.
The state attorney made a different point. He told the court he thought Donald was a pedophile, who posed a danger to the children of Hernando County. He said that if Donald regained mental competence, the state would bring him to trial on pending *1012 criminal charges and enforce his prison sentence. He also said that if Donald remained mentally incompetent and was returned to Hernando County to reside there next-door to Jones, pursuant to the proposed "home plan," the state would insist Donald be placed in a secure state psychiatric facility, such as Chattahoochee.
The court's remarks at the hearing indicate it was surprised by the state attorney's strong opposition to the "home plan." The judge said, "[t]his project [the `home plan'] may be dead from the inception." At the end of this hearing, the court questioned whether the "home plan" was not an "exercise in futility," not going to accomplish anything, and not help Donald. The court said it needed to hear the "entire story" before it could rule. Finally, the court ruled that the state would be treated as an "interested party," thereafter entitled to notice of hearings and further motions concerning the "home plan."
In an order dated December 7, 1990, the court made the State of Florida a party to the proceeding. It also continued "[a]ll matters and issues" before the court until a final hearing, to be scheduled in the future, could be conducted. The order also explicitly stated, "[t]he guardian is stayed from all action as proposed in his petitions pending the outcome at the final hearing on these matters."
Another hearing on the "home plan" was held March 4, 1991. At this hearing, the court concluded that the criminal cases against Donald must be resolved first before making "grandiose plans for spending a substantial amount of the estate's money when we don't have any idea what his long term future will be ..." The judge said:
[B]ut I would think that really an expenditure of such funds as proposed by the guardianship should not be made until we know that Mr. Nichols is going to be with us for a while and able to enjoy the fruits of those expenditures.
Linda's subsequent counsel said he had other objections to the plan which he wished to present at a later time. Jones' attorney asked if the court had changed its mind on the "home plan." The court said the criminal problems "changed everything." If they could be overcome, then the court could consider the plan in terms of the ward's best interest.
As a result of that March 4, 1991 hearing, the court entered an order dated March 14, 1991, in which it deferred consideration of the state's and Linda's objections to the "home plan," until there had been a disposition favorable to Donald of the criminal matters pending in Hernando County. It thus "continued" consideration of the "home plan." However, the order also required Linda to file a written pleading setting out specific reasons why she objected to the "home plan" within twenty days, and it placed on her the burden of proof of establishing her objections at any future hearing, to show why the "home plan" should not be implemented.[2]
In response to this order, Linda filed a timely objection to the "home plan." She alleged the purchase price for the real estate and construction price for the proposed home were excessive. She alleged that the plan to care for Donald was not feasible, and speculative. She also questioned whether Donald's care and safety would be as competently and economically handled by Jones in Hernando County as at the Veterans Administration Medical Center in Tuscaloosa.
On July 30, 1991, Jones filed an Annual Guardianship Plan for July 1, 1991 through June 30, 1992, and an Annual Report of Guardian of Property for the time period of *1013 July 1, 1990 through June 30, 1991, pursuant to sections 744.3675 and 744.3678, Florida Statutes. Jones stated his desire to carry out the "home plan" for Donald, but recognized the court's approval of it had been "suspended" because of objections by Linda and the state attorney. Nevertheless, Jones said he and his attorney were "persisting with legal efforts" to implement the "home plan." The disbursements disclosed in the Annual Report of Guardian of Property encompass substantial payments to Jones and Jones' attorney for unspecified purposes  presumably fees for services rendered. The nature of the services is not disclosed in the report.
The record on appeal does not show that any notice of these reports having been filed was sent to anyone, nor that copies of them were sent to anyone. The record also fails to disclose that any audit fee was paid to the clerk of the circuit court, pursuant to section 744.3678(4). Apparently, the clerk did not audit the report and advise the court of his findings within the time limit set by section 744.368 (ninety days after filing). Pursuant to section 744.368, fifteen days after the clerk reports his findings, the court should review the report and either approve or disapprove it.[3] The record does not show the court entered a timely order either approving or disapproving these reports.
Aside from a petition to sell a parcel of real property filed on December 19, 1991, nothing else of record transpired in this guardianship until May 28, 1992, when Donald was on the brink of death. Belatedly, Jones filed lengthy and numerous affidavits in proof of his services, past payments, and future intended payments. For Jones, they encompass the following periods of time: 5/4/88 through 1/2/89; 1/5/89 through 1/1/90; 1/2/90 through 1/13/91; and 1/14/91 through 5/25/92. Jones itemized the services he had performed for Donald, including substantial amounts related to the "home plan."
On May 29, Jones' attorney filed a petition for a court order to authorize payment of his attorney's fees and expenses for services rendered for Donald's benefit. He sought a total of $16,125.00 for attorney's fees for the period 7/2/90 through 12/31/91. Copies were mailed to Linda, to Jones and to Donald. Substantial time appears to relate to carrying out the "home plan."
By an order dated June 11, 1992, which was filed on June 15, 1992, the court approved Jones' annual report, filed July 30, 1991. The court recites that the clerk's report approving it was filed May 27, 1992. The clerk's report is not in this record on appeal. Notice of this order was certified as having been given to Jones' attorney, but not to Linda or anyone else, although by the time this order was signed, Donald had died. There is no court order in the record granting the attorney's petition for fees, until the last order entered in this proceeding, which is being appealed.
On July 13, 1992, Linda filed objections to the petition for attorney's fees in her capacity as personal representative of Donald's estate. As she had before, she questioned the feasibility and benefit of the "home plan" for Donald and thus objected to payment for any services rendered by Jones' attorney in attempting to carry out the plan.
While Linda's objections were pending and unresolved, Jones filed another Annual Report of Guardian of Property on July 16, 1992, covering the time period July 1, 1991 through June 24, 1992. This second annual report was also filed without notice to anyone. Substantial sums were paid to Jones and Jones' attorney for services, but the nature of the services are not shown. An order approving it was filed on August 11, 1992. It references a clerk's report filed on August 5, 1992, approving the report which is not in the record on appeal. No notice of the order was sent to Linda or anyone else other than Jones' attorney.
On September 22, 1992, Jones filed a third Annual Report of Guardian of Property covering the time of June 25, 1992 through September 14, 1992, together with a petition to authorize $491.99 in payment for his services. No notice or copies were given to Linda or anyone else. No court order approving this report appears of record.
*1014 From these reports and affidavits, it appears Jones continued to work on the "home plan" for returning Donald to Hernando County after December of 1990, when the court's approval of the plan was stayed. In the reports, Jones notes Donald is losing weight and becoming frail. In January of 1992, Jones arranged for Donald to appear in court in Hernando County to resolve the criminal charges against him. Donald had to stay in a nursing home and it took two people to get him in and out of a van. Afterwards, he was returned to Tuscaloosa.
Jones notes in his report for May 1992, that he was unable to understand Donald on the telephone. On May 20, 1992, Donald was found on the floor of his hospital room, the apparent victim of a stroke. He was placed in intensive care where he remained unconscious and unresponsive until he died on June 2, 1992.
On September 22, 1992, Jones' attorney filed a petition for attorney's fees of $7,485.00 and expenses covering the time period January 1, 1992 through September 16, 1992. Notice of this petition was served on Linda. Also on September 22, 1992, Jones filed a Petition for Discharge and Final Report. The report was served on Linda's attorney pursuant to Rules 5.680(c) and 5.680(d). It recites that objections to the report should be filed within thirty days from service of the petition for discharge, and that a hearing on the objections must be set and notice served ninety days after the objection is filed. This final report only covers June 25, 1992 through September 14, 1992.
The petition for discharge with a copy of the final report was served on Sun Bank, as Donald's personal representative. Apparently, by that time it had been discovered that the will appointing Linda personal representative of Donald's estate had been superceded by another will which named Sun Bank Donald's personal representative. Sun Bank was then acting as the personal representative of Donald's estate.
On September 23, 1992, Sun Bank filed objections to all fees previously paid to Jones and his attorney or proposed to be paid to them, which relate to the "home plan." It alleged the "home plan" was "excessive" and unauthorized. Specifically, it objected to any sums expended in furtherance of the "home plan," because it was a direct conflict of interest and forbidden by section 744.441 (Powers of Guardian upon Court Approval) and other provisions of the Florida Guardianship Law. It further alleged the "home plan" was unjustified and would not have benefited Donald.
Jones filed motions October 23, 1992, seeking to strike Sun Bank's objections, challenging its standing to file objections, and claiming it failed to timely file objections to fees for services rendered on account of the "home plan." The court directed the parties to file legal memoranda and briefs. Based on the pleadings filed, the court refused to consider Sun Bank's objections on the merits, citing McGinnis v. Kanevsky, 564 So.2d 1141, 1142 (Fla. 3d DCA 1990), for the proposition that "guardianship fees, properly authorized by the probate court, may not be set aside after the ward's death merely because his heirs consider that the awards were too high."
However, the court's order filed February 26, 1993, allowed any party aggrieved by the final accounting or other approvals of same, to file specific objections within ten days. On March 8, 1993, Sun Bank once again filed objections to payment for services relating to the "home plan." It alleged the "home plan" was wasteful and unjustified, and posed a conflict of interest. It also alleged the "home plan" was forbidden by section 744.441(14) and could not be authorized by the court. It detailed the extensive hours Jones had spent on the "home plan" commencing 1/2/90 through 3/6/92, totalling approximately 267 hours. It also challenged the 31.5 hours spent on the plan by Jones' attorney during 1990 and 1991.[4]
Without holding any hearing or giving notice to any party, the court cancelled Jones' guardian's bond and discharged the surety. *1015 It held a hearing on June 14, 1993, and as a result of this hearing, entered an order on July 9, 1993, in which it refused to "hear or rehear" any matters concerning fees or actions concerning the "home plan." It stated the prior accountings had all been approved through June 26, 1992. From this order, Sun Bank took this appeal.

I. FINALITY AND APPEALABILITY OF ORDER APPEALED.
Florida Probate Rule 5.680 suggests that guardianship proceedings are not final until the trial court grants the guardian's petition for discharge and enters an order of discharge. Fla.Prob.R. 5.680(g). See, e.g., Midland National Bank & Trust v. Comerica Trust Co., 616 So.2d 1081, 1084 (Fla. 4th DCA 1993); In re Estate of Dobbins, 215 So.2d 312, 312 (Fla. 1st DCA 1968); In re Guardianship of Straitz, 112 So.2d 889, 890 (Fla. 2d DCA 1959). However, guardianship proceedings are governed by the Florida Probate Rules. See In re Guardianship of Anderson, 568 So.2d 958, 958 (Fla. 4th DCA 1990); McGinnis. Rule 5.100 provides:
All orders and judgments of the court determining rights of any party in any particular proceeding in the administration of the estate of a decedent or ward shall be deemed final and may, as a matter of right, be appealed to the appropriate district court of appeal, except those appeals which may be taken directly to the supreme court as provided by article V, section 3 of the Florida Constitution. Appeals provided by this rule, including the right to supersedeas, shall be governed by the Florida Rules of Appellate Procedure.
Fla.Prob.R. 5.100. Rule 5.100 has been construed to permit "appeals from judgments and orders finally determining the substantial right of a party to pursue a claim even though the last order of the probate court may not have been entered." Howard v. Baumer, 519 So.2d 679, 681 (Fla. 1st DCA), rev. denied, 528 So.2d 1181 (Fla. 1988).
Under rule 5.100, the trial court's order, which denied Sun Bank's objections to Jones' and his attorney's fees relating to the "home plan," is a final order. McGinnis (order approving expert's report, which opined that previously authorized guardianship fees were excessive and should be reduced, was appealable under rule 5.100). See also Moore v. Moore, 577 So.2d 1359, 1360 (Fla. 2d DCA 1991) (probate court's order was final where order determined that court had no jurisdiction to require personal representative of estate to perform accounting or return assets to probate estate); Southeast Bank, N.A. v. David A. Steves, P.A., 552 So.2d 292, 293 (Fla. 2d DCA 1989) (order awarding attorney's fees was final under rule 5.100); Ricciardelli v. Faske, 505 So.2d 487, 487 (Fla. 3d DCA) (orders, which denied motions filed by estate creditors to extend time within which to file their respective written notices of independent action brought against estate, were final orders), rev. denied, 515 So.2d 229 (Fla. 1987).
Based on the record in this case, Jones questions which of the trial court's orders effectively denied Sun Bank's objections. Jones contends that the trial court denied Sun Bank's objections in the court's February 26, 1993 order and, therefore, Sun Bank should have filed notice of its appeal within thirty days after that order was filed. On the other hand, Sun Bank contends that the appeal was timely because the trial court did not specifically deny the objections until the court's July 9, 1993, order.
In its February order, the trial court did not specifically rule on Sun Bank's objections to fees which related to the "home plan." However, by inference, the February order arguably disposed of these objections because the trial court stated it intended to follow McGinnis, a case in which a trial court was precluded from revisiting previously approved attorney's fees. At the June 14, 1993 hearing, the trial judge indicated that he believed the February order had disposed of these objections. The judge stated:
Let me just say that I think my order was clear and I intend to stand by my previous order, and if [Sun Bank] is objecting to fees that have already been approved by the Court, that's too late.
* * * * *
It may not be final in the sense that it's ripe for appellate action, but in my mind *1016 it's final. That issue has been resolved, ... .
* * * * *
I thought I had made that clear in my order.
On the other hand, in its February order, the trial court also gave Sun Bank additional time to raise objections to Jones' final report and other objections ruled upon earlier. It gave Sun Bank, or any other interested party, ten days in which to file specific objections pursuant to rule 5.680 "even if they believe[d] that they [had] already complied with same." This no doubt led to the present confusion over which order was final. The better approach would have been to rule on all of Sun Bank's objections in one "final" order.
Sun Bank complied with the February 26th order by filing specific objections to the "home plan" on March 8th. This is sufficient to constitute a timely motion for rehearing, even if the February order is deemed to be final. See Williams v. Williams, 560 So.2d 308, 310 (Fla. 1st DCA 1990); Nardi v. Continental National Bank, 559 So.2d 307, 308-09 n. 3 (Fla. 3d DCA 1990); Griffin v. Tauber-Manon Associates, Inc., 452 So.2d 577, 578 n. 2 (Fla. 3d DCA 1984). Thus, in any event, Sun Bank's objections tolled the time for filing its notice of appeal until the trial court ruled on the objections. In re Estate of Zimbrick, 453 So.2d 1155, 1157-59 (Fla. 4th DCA 1984). See also In re Estate of Beeman, 391 So.2d 276, 278 (Fla. 4th DCA 1980) (noting that, pursuant to Florida Probate Rule 5.025, the Florida Rules of Civil Procedure, including rule 1.530, govern adversary probate proceedings). We conclude that in this case, the trial court did not render a final order until July 9, 1993, when it denied Sun Bank's March 8 objections to fees claimed in connection with the "home plan."

II. STANDING OF PERSONAL REPRESENTATIVE OF DECEASED WARD TO OBJECT TO GUARDIAN'S AND ATTORNEY'S FEES SHOWN IN PRIOR ACCOUNTINGS.
The court in this case refused to consider any objections to Jones' July 1991 and July 1992 annual reports based on its orders rendered June 15, 1992 and August 11, 1992 (after Donald's death), which approved the annual reports. The reports may encompass substantial fees paid to Jones and his attorney for efforts spent on the "home plan," although they do not specify what the services paid for encompass. But, contrary to the trial court's understanding of this cause, Jones' July 30, 1991 and July 16, 1992, annual reports were not properly approved by the court pursuant to the applicable statutes and rules, and no prior court order was entered approving or authorizing the payment of the fees for Jones' attorney encompassed in the petition filed on May 29, 1992.
Pursuant to section 744.3678, an annual guardianship report must be audited by the clerk within ninety days after it is filed. § 744.368(3), Fla. Stat. (1991). That did not happen in this case. The record indicates the clerk filed a "report," much belatedly, on May 27, 1992, for the July 1991 report.
Further, on June 15, 1992, only days after Donald died, the court entered an order approving Jones' July 1991 annual reports. No notice or copy of the order was given to Donald's personal representatives. Similarly, the July 1992 annual report was approved ex parte after Donald's death without notice to Donald's personal representative.
The personal representatives' objections to the "home plan" fees were first filed on July 13, 1992, by Linda, as Donald's personal representative, and these objections remained pending when Jones filed his July 1992 annual report on July 16, as to the "home plan" fees encompassed in the reports and petitions filed May 28 and 29, 1992. Sun Bank, as successor representative, has persistently continued to object to the fees. This was the personal representatives' first opportunity to object. And, as stated above, there was no court approval of the petitions for attorney's fees.
Although Linda's objections to guardian's and attorney's fees incurred on the "home plan," shown in the guardian's July 1991 annual report were late (more than thirty days after the report was filed), the court's *1017 approval itself was late, and no notice was given to Donald's next of kin as should have been done, to authorize action requiring court approval.[5]
Review of Linda's and Sun Bank's objections to the "home plan" fees and expenditures should not have been foreclosed or barred by any of these proceedings, and Sun Bank, as Donald's personal representative, is a proper party to raise these objections. See In re Estate of Feldstein, 292 So.2d 404 (Fla. 3d DCA 1974). A full hearing on the objections to the "home plan" should be held.[6] Courts must scrupulously oversee the handling of the affairs of incompetent persons under their jurisdiction and err on the side of over-supervising rather than indifference. See In re Guardianship of Lawrence v. Norris, 563 So.2d 195 (Fla. 1st DCA 1990); Allen v. City of St. Augustine, 500 So.2d 206 (Fla. 1st DCA 1986), rev. denied, 504 So.2d 766 (Fla. 1987).
The facts in this case distinguish it from McGinnis v. Kanevsky, 564 So.2d 1141 (Fla. 3d DCA 1990).[7] In McGinnis, fees for a guardian were properly applied for and approved by the court in compliance with applicable statutes. Beneficiaries of the deceased ward later objected to the fees on the ground they were excessive. The appellate court rejected their challenges. In this case, the thrust of the objections is not excessiveness but a direct conflict of interest between guardian and ward. Clearly, only a person other than the guardian can protect the ward's interests in such a case.
Further distinguishing this case from McGinnis, there was no prior or later court approval of most of the fees spent on the "home plan" or effective court approval of the plan. And, as explained above, the court's approval of Jones' annual reports, days after Donald's death, did not comply with current guardianship rules and statutes. Notice to the ward or his personal representative or next of kin is required if the petition concerns an act requiring court approval (conflict of interest). Fla.Prob.R. 5.630(b); § 744.447(2), Fla. Stat. (1991). None was given in this case.
Thus, we conclude Sun Bank, as Donald's personal representative or Linda, as his personal representative or next of kin, had standing to file objections to Jones' annual reports and the petitions for fees relating to the "home plan" in this case.[8] Any "interested" person can file written objections to a guardian's plans,[9] as well as other actions, taken or proposed to be taken by a guardian.[10]

III. CONFLICT OF INTEREST.
Jones argues on appeal that Linda and Sun Bank, in their various objections filed to the "home plan," failed to sufficiently specify the basis for them, as is required by sections 744.367(4) and 744.3715(1). We find little merit in this argument. Beginning with Linda's first pleading filed October 18, 1990 and those later filed by her individually and by both Linda and Sun Bank, as Donald's personal representative, objections were raised to the economic feasibility of the "home plan," questioning whether it was in Donald's best interest from a medical and personal care point of view, and pointing out that the proposed plan created a conflict of interest between guardian and ward. These are sufficiently specific objections to the "home plan."
Jones also argues on appeal that the court below had approved the "home plan," on "best interest of the ward" grounds, in 1990, and that this issue should not now be revisited. However, our review of the record in this case shows that although the court originally approved the "home plan" in an order dated October 7, 1990, after an ex parte hearing, it later suspended its approval in the face of objections filed by Linda and *1018 the state attorney. In its order dated December 7, 1990, the court stayed Jones from taking "all action as proposed in his petitions pending the outcome at the final hearing on these matters." No final hearing was ever held on the "home plan" and the stay was never lifted.[11] Thus, aside from a short time in 1990, Jones was not authorized by the court to proceed with the "home plan."
Linda originally argued the "home plan" violated section 744.446 of the Florida Guardianship Law. That statute provides:
(1) It is essential to the proper conduct and management of a guardianship that the guardian be independent and impartial. The fiduciary relationship which exists between the guardian and the ward may not be used for the private gain of the guardian other than the remuneration for fees and expenses provided by law. The guardian may not incur any obligation on behalf of the guardianship which conflicts with the proper discharge of the guardian's duties.
(2) Unless prior approval is obtained by court order ... a guardian may not: (d) Directly or indirectly ... sell any property ... from ... any business entity of which the guardian or his spouse or any of his lineal descendants, or collateral kindred, is an officer, partner, director, shareholder, or proprietor, or has any financial interest.
Standing by itself, this provision could be interpreted as allowing Jones to carry out the "home plan" proposed in this case, provided court approval was obtained in advance.
However, section 744.441(14) appears to prohibit the "home plan," even if court approval is obtained. That section provides:
"After obtaining approval of the court pursuant to a petition for authorization to act, a plenary guardian... may
* * * * * *
(14) Purchase the entire fee simple title to real estate in this state in which the guardian has no interest, but the purchase may be made only for a home for the ward... ." (emphasis supplied)
This is a much older statute than section 744.446. Section 744.441(14) first appeared in the Florida Statutes as section 745.03 in Florida's first major codification of its guardianship laws in 1945. Redfern Wills and Administration in Florida § 25-1. It was recodified as section 744.441(17) in 1975, and as 744.441(14) in 1977.
Section 744.41(14) is consistent with the high fiduciary standards courts traditionally impose on guardians in dealing with their ward's property.[12] If a transaction involves a conflict of interest between guardian and ward, it is strictly prohibited. Whether the transaction is fair to the ward or in his best interest is irrelevant.[13] Section 744.441(14) permits guardians to purchase Florida real estate for their wards only for one purpose  a dwelling for the ward and for the ward's family, and only if the guardian does not own the real estate to be sold to the ward's estate. Cf. Webster & Moorefield, P.A. v. City National Bank of Miami, 453 So.2d 441 (Fla. 3d DCA 1984); In re Nusbaum's Guardianship, 152 Fla. 31, 10 So.2d 661 (1942).
Section 744.446, has a valid but different field in which to operate. It deals with indirect ownership or control of property to be sold to a ward. Only with the court's approval and recognition of a potential conflict of interest can real estate indirectly owned or controlled by a guardian or a close family member of the guardian, be sold to the ward. It is a much broader prohibition than section 744.441(14) and was designed for a more complicated business era than the one section 744.441(14) operated in. However, section 744.441(14) continues to bar direct sales of real estate from guardian to ward under any circumstances.
We thus conclude that the "home plan" in this case is a transaction prohibited by section *1019 744.441(14) because Jones and his wife own the real estate proposed to be sold to Jones' ward, Donald. This transaction could not have been authorized by any court order, even if one had been entered. Unauthorized investments by guardians are made at their own peril. Redfern, Wills and Administration in Florida § 25-39.
It follows that a guardian and attorney representing a guardian cannot charge a ward fees for unauthorized services rendered. But, even if court authorization might permit payment for such services, as noted above, Jones and his attorney operated in this guardianship case since December, 1990 without any court approval or authorization to implement the "home plan." Thus, any services rendered in carrying it out, be it by Jones as the guardian, or by Jones' attorney,[14] can be objected to by Donald's personal representatives[15] and disallowed by the court. And any payments made to them for this purpose can be recovered.[16]
Accordingly, we reverse the order appealed in this cause. We remand for further proceedings consistent with this opinion. See Baskin v. Guardianship of Baskin, 535 So.2d 306 (Fla. 2d DCA 1988); rev. denied, 544 So.2d 199 (Fla. 1989); In re Nusbaum's Guardianship. In re Guardianship of Lawrence, 563 So.2d 195 (Fla. 1st DCA 1990).
GOSHORN and PETERSON, JJ., concur.
NOTES
[1] There is no certificate of service in the record.
[2] Although not relevant to the outcome of this cause, this ruling appears to be contrary to established law in this area. Generally, the burden of proof of the reasonableness of attorney's fees and the correctness of an accounting is placed on the guardian. See American Surety Co. v. Andrews, 152 Fla. 638, 12 So.2d 599 (1943); Firmin v. Sanborn, 119 Fla. 396, 161 So. 555 (1935); Estate of Ganier, 402 So.2d 418 (Fla. 5th DCA 1981), quashed on other grounds, 418 So.2d 256 (Fla. 1982); Beck v. Beck, 383 So.2d 268 (Fla. 3d DCA 1980); Cohen v. Cohen, 346 So.2d 1047 (Fla. 2d DCA 1977). Where the issue is conflict of interest and what may or may not be in the ward's best interest, the guardian should have to produce clear and convincing evidence to persuade the court to authorize the action sought by the guardian. Cf. § 744.3725, Fla. Stat. (Supp. 1990).
[3] § 744.369(1) and (5), Fla. Stat. (Supp. 1990).
[4] The calculations of hours of service spent on the "home plan" are apparently based on the affidavits and proofs filed by Jones on May 28, 1992, and by Jones' attorney in support of his petition for fees.
[5] § 744.447(2), Fla. Stat. (1991); Fla.Prob.R. 5.630(b).
[6] § 744.3715(1), Fla. Stat. (Supp. 1990).
[7] See also In re Guardianship of White, 140 So.2d 311 (Fla. 1st DCA 1962).
[8] See Midland National Bank & Trust v. Comerica Trust Co., 616 So.2d 1081 (Fla. 4th DCA 1993).
[9] § 744.367(4), Fla. Stat. (1991).
[10] Fla.Prob.R. 5.700.
[11] After another hearing held March 4, 1991, at which the objections were still not considered on the merits, the court again "continued" consideration of the "home plan."
[12] See 39 C.J.S. "Guardian and Ward" § 98.
[13] 39 C.J.S. "Guardian and Ward" §§ 99 and 100. See In re Nusbaum's Guardianship, 152 Fla. 31, 10 So.2d 661 (1942).
[14] See Fitts v. The Guardianship Estates of Campbell, 466 So.2d 431 (Fla. 5th DCA 1985); § 744.108(3), Fla. Stat. In awarding fees, the court must have determined no conflict of interest exists.
[15] Section 744.446(3) provides:

Any activity prohibited by this section is voidable during the term of the guardianship or by the personal representative of the ward's estate, and the guardian is subject to removal and to imposition of personal liability through a proceeding for surcharge, in addition to any other remedies otherwise available.
[16] See Webster & Moorefield P.A. v. City National Bank of Miami; In re Guardianship of Lawrence, 563 So.2d 195 (Fla. 1st DCA 1990).