YILLANTI, Judge.
Lutheran Services Florida, Inc., the guardian of Bertha Shell, appeals from the probate court’s order denying its objections to an earlier order that awarded Lutheran Services guardian’s fees in an amount less than it requested. The same order also denied Lutheran Services’ request for an injunction against' the Elder justice Center (EJC). We affirm on both issues.
In November 2002, Lutheran Services was appointed as Shell’s emergency temporary guardian after it was discovered that various individuals had been using Shell’s name to obtain credit and to plunder her bank accounts. Shell was subsequently adjudicated incapacitated, and Lutheran Services was appointed as plenary guardian in February 2003. Due to Shell’s continued incapacity, Lutheran Services has remained her guardian since its appointment.
Starting in September 2003, Lutheran Services began regularly submitting petitions for awards of guardian’s fees and costs to the probate court. Since that time, the EJC has reviewed each petition submitted by Lutheran Services before referring it to the probate court. The EJC is a court program created by the Thirteenth Judicial Circuit Court at the recommendation of the Joint Circuit Workgroup on Guardian Fees. It acts; much like an auditor, and its staff reviews guardians’ fee petitions at the direction and under the supervision of the probate court. The probate court has developed and published specific guidelines for the content and format of fee petitions from * guardians, and it has published detailed guidelines concerning how guardians’ fee petitions- will be reviewed by the EJC and what fees are subject to review and possible reduction. These guidelines include specific limits on the time that will be allowed for certain common or routine tasks, with the guardian being able to obtain a higher fee for those tasks only if the guardian provides a detailed explanation of why the higher fee is warranted.
In October 2003, the EJC recommended certain reductions in the guardian’s fees requested by Lutheran Services for services rendered to Shell. ' The probate court approved the petition after applying those recommended reductions. Lutheran Services sought rehearing, and the probate court granted rehearing and ultimately awarded the total amount of the fees requested.
In December 2003, May 2004, November 2004, and May 2005, Lutheran Services submitted additional petitions for guardian’s fees and costs. The EJC reviewed each petition and recommended certain reductions in the fees claimed. The probate court approved each of these petitions after applying the reductions recommended by the EJC. Lutheran Services did hot seek rehearing of the orders awarding reduced fees for the services claimed in these petitions.
In December 2005, Lutheran Services submitted its next semiannual petition for *888 guardian’s fees and costs. The EJC again recommended certain reductions, and the probate court again approved the petition after applying those recommended reductions. However, after receiving this order, Lutheran Services filed an objection to the order, challenging the reduction in its fees and also seeking a global injunction against the EJC to prohibit it from making “arbitrary and unfounded reductions in its recommendations as to awards of guardian’s fees and costs, and from deviating from Court-established fee guidelines” in every guardianship case. Lutheran Services contended that its fee petition was prepared in compliance with the probate court’s guidelines for fee petitions and that the probate court’s order was devoid of any facts supporting the reductions in the fees. Lutheran Services also argued that it was denied due process when its fees were reduced without a hearing.
The probate court subsequently held an evidentiary hearing on Lutheran Services’ objections, thus rendering Lutheran Services’ due process argument moot. At the evidentiary hearing, the guardian’s representative, Sharon Van Wart, testified that she had performed the various tasks listed in the fee petition. She also testified that she believed that the fee petition complied with the probate court’s guidelines.
Because no one, other than presumably Van Wart herself, was representing Shell’s interests at the hearing,[1] the probate court then proceeded to question Van Wart concerning the reasonableness of the time spent to perform some of the tasks itemized in the petition. For example, the probate court pointed out that the petition sought $168 for the guardian’s time to purchase a birthday present and cake for Shell’s birthday. This figure did not include the cost of the present and the cake. The court asked Van Wart why a $15-per-hour staff member could not have picked up the cake rather than Van Wart doing so at $70 per hour. Van Wart did not directly respond to the probate court’s question or provide an explanation for the amount of time spent buying these items. The probate court also questioned Van Wart as to why there were three telephone calls to a single doctor’s office on the same day— one call to set the appointment, a second to leave a message to provide the doctor with a mailing address, and a third to actually give the doctor the mailing address. The probate court asked Van Wart why these activities could not all have been accomplished in one telephone call, or at least billed at a reduced rate per call, particularly since this was one of Shell’s regular doctors. Van Wart did not provide any justification for these repeated calls, each of which was billed at $7, thus resulting in Shell being charged $21 to set a doctor’s appointment. Instead, Lutheran Services’ counsel responded that Lutheran Services was feeling “micromanaged” and that this type of micromanagement would force it out of business. Over the course of the hearing, Van Wart provided an explanation *889 for the amount of time spent on only one task. As to the other disputed tasks, she simply testified that she believed that her billing was in accordance with the court’s guidelines.
On the issue of the injunction, Van Wart testified that she believed that the reductions in the claimed fees recommended by the EJC were arbitrary. She also testified to certain delays in being paid after the fee petitions were filed, which delays she attributed to the EJC. She asked the probate court to enter an injunction requiring the EJC to comply with the published guidelines and to process fee petitions within thirty days of filing.
The probate court then heard testimony from the program manager for the EJC. The program manager testified that the EJC reviews each petition for guardian’s fees in light of the guidelines set forth by the probate court, and it makes recommendations for reductions based on those guidelines. The program manager also testified that the recommendations made by the EJC are just that — recommendations — and that the probate court has the authority to agree or disagree with those recommendations. She noted that the EJC does not make arbitrary reductions and it will allow additional time for specific tasks if thp guardian provides an explanation for the extra time in the petition. However, in the absence of such an explanation, the EJC will recommend a reduction for what appears to be excessive time claimed for performing common or routine tasks. The program director also explained why certain delays were inherent in the fee petition review process and explained what steps had already been taken to attempt to reduce those delays.
At the conclusion of the hearing, the probate court took the matter under advisement. The probate court subsequently entered an order denying Lutheran Services’ objections to the reductions in the claimed fees and denying its request for an injunction. Lutheran Services now appeals as to both issues.
Addressing first the issue of the guardian’s fees, we note that section 744.108(1), Florida Statutes (2005), provides that a guardian is entitled to a reasonable fee for services rendered to the ward. In seeking such fees, the guardian has the burden to establish through appropriate proof that the services claimed were actually performed and that the fees claimed for those services are reasonable. In re Estate of Hollenbeck, 137 So.2d 854, 856 (Fla. 3d DCA 1962) (citing Lewis v. Gramil Corp., 94 So.2d 174, 176 (Fla.1957)). Based on that proof, the probate court has the discretion to determine the amount of the fees to which the gdardian is reasonably entitled. See, e.g., In re Guardianship of Sitter, 779 So.2d 346, 348 (Fla. 2d DCA 2000); Butler v. Guardianship of Peacock, 898 So.2d 1139, 1141 (Fla. 5th DCA 2005); In re Estate of Hollenbeck, 137 So.2d at 856. This discretion includes the ability to rely on common sense and experience to adjust the time claimed for common or routine tasks. It also includes the discretion to deduct time claimed by a guardian for noncore, delega-ble tasks that are better performed by others and to deduct excess time claimed due to the guardian’s own inefficiency because such time is not expended for the benefit of the ward.
However, the probate court’s discretion to award guardian’s fees is not unbridled. While the probate court has both the duty and the right to protect the interests of the ward, see Nelson & La Femina, P.A. v. Guardianship of Platsky, 745 So.2d 1057, 1057 (Fla. 3d DCA 1999); McGinnis v. Kanevsky, 564 So.2d 1141, 1143 (Fla. 3d DCA 1990), overruled on other grounds by Hayes v. Guardianship *890 of Thompson, 952 So.2d 498 (Fla.2006), the probate court is not “at liberty to award anything more or less than fair and reasonable compensation for the services rendered or monies expended in each individual case,” Lewis, 94 So.2d at 176. Moreover, the legislature has prescribed certain factors that the probate court must consider when determining whether the fee requested by the guardian is reasonable, including the time and labor involved, the skill required to perform the services, and the experience and abilities of the person performing the services, among other factors. § 744.108(2). That said, however, when it is clear that the probate court has considered the statutory factors and has based its ruling on competent, substantial evidence in the record, this court cannot say that the probate court’s ruling is arbitrary, fanciful, or unreasonable and thus an abuse of discretion. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) (holding that judicial discretion is abused only when the judicial action is arbitrary, fanciful or unreasonable) (quoting Delno v. Market St. Ry. Co., 124 F.2d 965, 967 (9th Cir.1942)).
In this case, it is clear from the probate court’s questioning of Van Wart that it considered the statutory factors in determining whether the fees requested by Lutheran Services were reasonable. The probate court’s questions to Van Wart directly addressed the issues of whether her skills were necessary to perform certain tasks, whether certain tasks would have been better performed by nursing home personnel at no cost to the ward, and whether the time claimed by the guardian was an accurate reflection of the time actually spent on the claimed tasks. While Van Wart testified that each of the specific tasks listed in the fee petition were performed, she did not testify as to the amount of time actually spent to perform each of these tasks. She also provided no explanation as to why she performed certain noncore, delegable tasks, such as filing, rather than having clerical personnel perform these tasks. When Lutheran Services failed to meet its burden of proof to establish that the amounts claimed were reasonable, the probate court properly exercised its discretion to reduce the claimed amounts in light of the court’s experience and common sense. Based on our review of the probate court’s questions and Van Wart’s responses, or lack thereof, we cannot say that the probate court failed to consider the factors listed in section 744.108(2) or that it abused its discretion in reducing Lutheran Service’s fees for disputed tasks not substantiated by Van Wart’s testimony at the hearing.
In this appeal, Lutheran Services relies on Sitter for the proposition that a probate court’s decision to reduce a guardian’s fee must be based on competent, substantial evidence. 779 So.2d at 348. We do not disagree with this general statement. However, we note that no presumption of reasonableness attaches to a guardian’s petition for fees, and no statute or case law requires the probate court to simply accept the guardian’s fee petition at face value and rubberstamp it. Nor is the probate court required to accept a guardian’s personal assertion of the time he or she spent performing a common task as dispositive of the issue of reasonableness. Indeed, such would be an abdication of the probate court’s responsibilities to the ward. Instead, the probate court may question the guardian concerning the tasks performed and the time spent performing those tasks, and the guardian’s responses to those questions constitute competent evidence upon which the probate court may rely when determining whether the fee requested is reasonable. Moreover, when the probate court accepts such testimony *891 from the guardian, it may assess the credibility of that testimony in light of the court’s experience and common sense, and this court must defer to the probate court’s credibility assessment.
In addition, unlike in Sitter, the probate court in this case had not approved a previous fee petition that was substantially similar to the one at issue here. Id. at 347-48. Instead, the record shows that the probate court in this case had reduced the time claimed by Lutheran Services in each of its prior fee petitions in some respects. Thus, unlike in Sitter, we cannot say in this case that the probate court “abuse[d][its] discretion ... because the award falls outside the parameters of reasonableness established by the previous [petition].” Id. at 348. Moreover, with the advent of the EJC, an audit function exists now that was not present when Sitter was decided.
Here, the probate court elicited, or attempted to elicit, evidence from Van Wart to support the disputed fee entries. Had Van Wart provided a reasonable explanation for why the claimed time was necessary to accomplish the disputed tasks in this case, we might have had some basis to find that the probate court abused its discretion in rejecting that testimony and reducing the fee. However, when Van Wart failed to provide any testimony, reasonable or not, to support the time claimed for the specific tasks at issue, the probate court was within its authority to reduce the fees accordingly. Therefore, we hold that the probate court did not abuse its discretion in reducing the fees claimed by Lutheran Services in this case and in denying the objections raised by Lutheran Services to the reduced fee.
Turning to the issue of Lutheran Services’ request for an injunction against the EJC, we affirm the probate court’s ruling for two reasons. First, the EJC was not a party to the proceeding below. As a general rule, a trial court may not enter an injunction against an entity that is not a party to the action at issue. See, e.g., Leighton v. First Universal Lending, LLC, 925 So.2d 462, 464 (Fla. 4th DCA 2006) (“ ‘A court is without jurisdiction tu issue an injunction which would interfere with the rights of those who are not parties to the action. An injunction can lie only when its scope is limited in effect to the rights of parties before the court.’ ”) (quoting Sheoah Highlands, Inc. v. Daugherty, 837 So.2d 579, 583 (Fla. 5th DCA 2003) (citation omitted)); Fontainebleau Hotel Corp. v. City of Miami Beach, 172 So.2d 255, 256 (Fla. 3d DCA 1965) (“[A] court of chancery does not have the power to enjoin persons not parties to the cause.”). Here, Lutheran Services did not serve or join the EJC, nor did Lutheran Services serve or join the Thirteenth Judicial Circuit Court, the entity that created, authorized, and funded the EJC. In addition, Lutheran Services did not choose to raise its concerns by seeking declaratory relief against these entities. Rather, Lutheran Services challenged the EJC’s authority to perform its functions during a rather contentious fee dispute hearing in a single ward’s case. Because the EJC was not properly before the probate court at the hearing on Lutheran Services’ objections, the probate court was correct in denying injunctive relief on procedural grounds.
Second, even if this procedural problem had not existed, the probate court properly denied the injunctive relief Lutheran Services was seeking on substantive grounds. Although a large part of the EJC’s function is to review guardian fee petitions and recommend reductions if the fees appear excessive, the EJC does not perform any quasi-judicial functions, such as taking evidence or resolving disputes. *892 Instead, if a guardian disputes a recommended fee reduction, the guardian is entitled to a hearing before the probate court upon timely request. This system of review and recommendation is a vastly improved version of the prior system under which employees of the clerk’s office audited petitions for guardian’s fees without the benefit of published procedures and guidelines to assist in their review. The decision to transfer this review process to a separate entity that operates under greater court supervision with specific published guidelines was a reasonable approach to improve the prior system- — which all the parties below agreed was “broken.”
Inarguably the EJC’s goals are laudable: to establish safeguards and guidelines in guardianship cases to ensure that the wards’ assets are protected while guardians are fairly compensated. Lutheran Services contends that the guardians’ fee petitions are being nitpicked and that guardians should not be told how much time a specific task “should” take. However, we fail to see how establishing nonbinding guidelines for determining reasonable fees based on the average time that a recurring common or routine task should take is anything but a reasonable manner in which to expedite review of fee petitions while also protecting a ward’s estate from unreasonable charges. Notably, Lutheran Services does not quibble with the need to provide greater protection of a ward’s assets.
Lutheran Services also argues that the EJC has, ironically, created more expense to the ward in the form of additional hearings on objections to fee reductions. To the extent that Lutheran Services’ assertion is accurate, it appears to be primarily due to the learning curve associated with instituting any new system. At the hearing, the EJC program manager noted that there had been a backlog of fee petitions but that procedures were now in place which should speed up the review of fee petitions. Lutheran Services admitted that just six weeks before the hearing in this case, new procedures had been put in place after consultation between the court, the EJC staff, professional guardians, and the guardians’ counsel to specifically address most of the perceived problems raised by Lutheran Services in its petition for the injunction. However, before these new procedures had had a chance to work, Lutheran Services sought to throw out the entire EJC program. Lutheran Services is a renowned nonprofit organization with impeccable credentials for providing guardianship services. Certainly it would be in Lutheran Services’ best interest to work with the court system to improve this system rather than seeking to end it.
Affirmed.
CANADY, J., Concurs specially.
LEVY, DAVID L., Associate Senior Judge, Concurs.

. At the start of the hearing, the probate court expressed its concerns that no one at the hearing was representing the ward, whose interests on the fee reduction issue might well conflict with the guardian's interests since the guardian’s fees were being paid from the ward's assets. We share the probate court’s concern that no one is truly representing the ward’s interests when objections to fee reductions are filed and brought to hearing by the guardian. We also note that section 744.391, Florida Statutes (2005), requires the probate court to appoint a guardian ad litem to represent the interests of the ward “if the interest of the guardian is adverse to that of his or her ward.” However, we recognize that appointing a guardian ad litem for the ward each time the guardian petitions for an award of fees is impractical. Therefore, we must rely on the probate court to exercise its authority responsibly to protect the interests of the ward in these situations.